385 A.2d 1057.

WILLIAM E. HARVEY III *et al. v.* DIRECTOR OF THE
DEPARTMENT OF EMPLOYMENT SECURITY *et al.*

MAY 11, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This is a petition for certiorari brought pursuant to the provisions of the Administrative Procedures Act, G.L. 1956 (1977 Reenactment) §42-35-16. The petitioners have asked us to review a judgment entered in the Superior Court which affirmed the Department of Employment Security's Board of Review denial of their application for unemployment compensation benefits. The petitioners, who are three elementary schoolteachers, are employed by the Roman Catholic Diocese of Providence. They pursue their pedagogical chores at the Blessed Sacrament School in Providence. By agreement of the parties the cases were consolidated for appeal.

On September 4, 1974, petitioners signed teaching contracts with Blessed Sacrament School for the 1974-75 school year. Under these contracts petitioners received "annual compensation" payable in 20 installments. The term of the contracts was from September 4, 1974, to June 13, 1975. At the end of the school year in June 1975, petitioners had not yet signed new teaching contracts for the 1975-76 school year.[1]

All petitioners filed claims for unemployment compensation benefits under Title II of the Emergency Jobs and Unemployment Assistance Act of 1974, Pub. L. No. 93-567, 88 Stat. 1845 (1974), as amended by the Emergency

---

[1]Apparently, it was the accepted practice for lay teachers employed by the diocese to wait until September before the new contracts were signed.

Compensation and Special Unemployment Assistance Extension Act of 1975, Pub. L. No. 94-45, 89 Stat. 236 (1975).[2] Although Title II is formally known as the Special Unemployment Assistance Program, our acronymic society quickly settled upon "SUAP" and so shall we. SUAP created a temporary federal program of special unemployment assistance for workers who are unemployed during a period of aggravated unemployment and who are not otherwise eligible for unemployment allowances under any other law. I.R.C. §3304 note 201. SUAP ties the availability of federal funds to certain emergency "on" indicators which are based upon both national and local rates of unemployment. I.R.C. §3304 note 204. The program provides assistance for long-term unemployed persons who have exhausted available state unemployment compensation benefits. The nature of the compensation scheme anticipates sustaining an unemployed worker during the search for re-employment in a locale marked by chronic unemployment and a depressed job market. *Chicago Teachers Union, Local No. 1* v. *Johnson,* 421 F. Supp. 1261, 1264 (N.D. Ill. 1976).

Section 202 of the 1975 Act amended SUAP by adding a provision which denied SUAP eligibility to teachers, researchers, and administrators between terms at educational institutions if the individual performed services during the first term and "such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms." I.R.C. §3304 note 203(b). The legislative history of the amendment reveals a congressional intent to deny SUAP benefits to teachers who are "temporarily unemployed" for the periods between terms. S. Rep. No. 94-208, 94th Cong., 1st Sess. 5-6, *reprinted in* 1975 U.S. Code Cong. & Ad. News 377, 382.

---

[2]These emergency unemployment compensation acts are set forth in a series of notes following I.R.C. §3304. The section numbers referred to will be of the 1974 Act, not the Internal Revenue Code.

No one disputes that petitioners, by reason of their employment with the Diocese of Providence, are ineligible to file for unemployment benefits under the Rhode Island Employment Security Act, G.L. 1956 (1968 Reenactment) chapter 42 of Title 28. Section 28-42-8(4)(a) excludes services performed in the employ of an organization operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or an associaton of churches. Since petitioners were not covered under state law, they applied for benefits under SUAP. The Director of the Department of Employment Security (the department) denied petitioners' claims,[3] and they appealed the denials to the Board of Review (the board). After a consolidated hearing the board found that, although petitioners had not signed a contract to teach again in September 1975, they expected to return to work at that time.[4] The board concluded that SUAP was not intended to pay benefits to individuals so situated and sustained the decision of the director. In turn a Superior Court justice affirmed the board's decision.

At issue here is the intent of Congress in excluding from SUAP eligibility teachers who are unemployed during the period between successive academic periods when they have a "contract" to perform services during the upcoming term.[5]

---

[3]The decision of the director was based upon G.L. 1956 (1969 Reenactment) §16-13-2, which provides that teaching service shall be on a basis of an annual contract which is deemed to be "continuous." That section, however, applies only to public schoolteachers, not the petitioners. Sections 16-13-1, 16-11-1.

[4]All of the petitioners did, in fact, sign teaching contracts with Blessed Sacrament School in September 1975 for the 1975-76 term.

[5]I.R.C.§3304 note 203(b) provides:

"An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period) if —

The petitioners urge a strict construction of the word "contract" so as to exclude only those teachers who have signed a formal, written contract to teach again in September. The department urges that the term "contract" be interpreted to encompass all verbal, written, or implied agreements. Thus, the department would exclude teachers from SUAP if the teacher expected to return and teach in September, regardless of whether the teacher had signed a formal contract to do so. In support of its position the department cites a "directive" from the United States Department of Labor interpreting section 203(b), Unemployment Insurance Program Letter No. 29-75, Sept. 12, 1975.[6] The directive admonishes state employment security offices to look closely at the circumstances of each case to determine whether there is any kind of "mutual commitment" between the teacher and a particular institution. The Department of Labor takes the position that if the teacher has not been terminated, or has not retired or resigned, there may be an "implied continuing contractual relationship."

An examination of the legislative history surrounding the enactment of section 203(b) is not particularly illuminating. As noted above, this and other amendments to SUAP were part of the 1975 Emergency Compensation Act. The most detailed explanation of the need for excluding from SUAP teachers who are between terms was set forth in S. Rep. No. 94-208, 94th Cong., 1st Sess. 5-6, *reprinted in* 1975 U.S. Code Cong. & Ad. News 377, 382:

---

(1) such individual performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and

"(2) such individual has a contract to perform services in any such capacity for any educational institution or agency for the *later of such academic years or terms.*" (Emphasis added.)

[6]We will assume, as the parties before us have, that this interpretive regulation is not binding on this court. *Williamson* v. *Mississippi Employment Security Commission,* 347 So. 2d 978 (Miss. 1977); 1 Davis, *Administrative Law* §5.05 (1958).

> "In the absence of this prohibition, a number of states have indicated that they find no provision in their laws by which they can deny emergency assistance to professional educational workers who are only temporarily unemployed during this period. Payment of such emergency assistance to workers who have contracts for the succeeding school term would be contrary to the treatment of their counterparts in institutions of higher education, who are covered under regular unemployment insurance. In Public Law 91-373, Congress mandated that college and university teachers, researchers, and administrators with contracts for both terms be denied benefits with respect to the period between terms. H.R. 6900 [Pub. L. No. 94-45] would provide the same treatment with respect to these categories of employees of primary and secondary schools who are otherwise eligible for Special Unemployment Assistance."

This report reveals a congressional intent that all teachers were to be treated the same, whether they seek regular compensation benefits or SUAP benefits.

Since the time petitioners filed for SUAP benefits in June 1975, Congress has further amended both SUAP and the regular unemployment compensation program. Unemployment Compensation Amendments of 1976, Pub. L. No. 94-566, 90 Stat. 2667 (1976). While these amendments do not directly affect the exclusion with which we are concerned (I.R.C. §3304 note 203(b)), they do assist our efforts to discern congressional intent. As noted before, in S. Rep. No. 94-208, Congress amended the regular unemployment compensation program by proscribing compensation to teachers, researchers, and administrators of certain nonprofit institutions of higher education if they had a "contract" to perform services in the upcoming term. The 1976 amendments made certain "technical adjustments" to this section (I.R.C. §3304(a)(6)(A)). Specifically, teachers, researchers, and administrators are now ineligible to receive regular

unemployment compensation if "there is a contract or reasonable assurance that such individual will perform services" in the upcoming term. I.R.C. §3304(a)(6)(A), *as amended by* Pub. L. No. 94-566, §115(c), 90 Stat. 2670-71 (1976). The nonprofessional employees of these educational institutions are now ineligible under the regular program if there is a "reasonable assurance" they will perform services in the upcoming term. *Id.* The SUAP eligibility requirements were similarly amended to exclude the nonprofessional employees of educational institutions if there is a "reasonable assurance" that they will perform services in the upcoming term. I.R.C. §3304 note 203(c), *as enacted by* Pub. L. No. 94-566 §603, 90 Stat. 2691 (1976). The section by which petitioners were excluded from SUAP eligibility (I.R.C. §3304 note 203(b)) was not amended to include the "reasonable assurance" language.

The petitioners assert that the failure of Congress to amend section 203(b) was both intentional and meaningful. They claim that congress intended to draw a clear dichotomy between those employees who have a contract to return to work in September and those who simply have a reasonable assurance to return. However, a detailed search of the debates and congressional reports accompanying the 1976 amendments fails to disclose a congressional desire to draw such a distinction. To the contrary, the legislative history suggests that Congress was attempting to provide for similar treatment for all educational workers who are, in the language of the theater, "in between engagements."

In introducing the conference report accompanying the 1976 amendments, Congressman Corman noted:

> "The conference bill also prohibits payment of SUA [special unemployment assistance] benefits during recess periods to nonprofessional school employees with reasonable assurance of returning to their previous jobs at the end of the recess period. A similar provision pertaining to professional school employees — teachers,

researchers, and administrators — is contained in present law." 122 Cong. Rec. H 12169 (daily ed. Oct. 1, 1976).

Congressman Steiger went to somewhat greater length in explaining that the purpose of the amendment was to provide similar treatment for professional and nonprofessional school employees:

> "Second, the bill would prohibit the payment of SUA benefits during the summer recess to nonprofessional school employees who have reasonable assurance of re-employment in the fall. Present law provides that SUA benefits may not be paid to professional school employees for periods between school years if the individual claimant has a contract for both the prior and forthcoming years. This bill would simply provide for similar treatment for nonprofessional school employees." 122 Cong. Rec. H 11616 (daily ed. Sept. 29, 1976).

From this brief review of the pertinent documents, two conclusions may be reached: first, that the record does not support petitioners' contention that Congress was intentionally drawing a distinction between educational employees who have a reasonable assurance of returning to work in the fall and those who have signed a contract to do so, and, second, that congress, while it did not say so, actually intended to provide similar treatment for professional and nonprofessional educational employees.

Other courts which have had occasion to determine the eligibility of teachers under SUAP have uniformly denied coverage. *Williamson v. Mississippi Employment Security Commission*, 347 So. 2d 978 (Miss. 1977); *Chicago Teachers Union, Local No. 1 v. Johnson*, 421 F. Supp. 1261 (N.D. Ill. 1976); *Anderson v. Employment Division*, 25 Ore. App. 845, 551 P.2d 482 (1976). In *Anderson* the result was based upon a particular Oregon statute which prohibited the payment of unemployment compensation to school employees during a

school recess. In the *Chicago Teachers Union* case the teachers were seeking SUAP benefits when the school system was closed 3 weeks prematurely. Stressing that SUAP was designed to sustain unemployed workers whose search for re-employment is prolonged by depressed economic conditions, the District Court denied the teachers' motion for a preliminary injunction restraining the state from refusing to process their SUAP applications.

The facts of *Williamson* v. *Mississippi Employment Security Commission*, 347 So. 2d 978 (Miss. 1977), are virtually identical to those presented in the instant case. There, a public schoolteacher applied for SUAP benefits the day after the 1974-75 school term ended in May 1975. The claimant's teaching contract for the succeeding term was not formalized until July; thus she claimed benefits for the interim period. The Mississippi Supreme Court, in rejecting her claim, adopted the interpretation of the Department of Labor and implied a continuing contractual relationship between the claimant and the school system. Stressing the emergency nature of the program, the court stated:

> "Given the background and stated purpose of the Act, it becomes apparent that the Legislature did not intend the word 'contract' in the context of the Act to be given a strictly formal construction.

> "In light of this, where a teacher in a school system has previously contracted on an annual basis with the option to be paid in either nine or twelve month periods, and, there is a reasonable expectation of employment after the recess, such will be deemed to satisfy the requirements of a 'contract' for the purposes of the Emergency Employment Compensation Act." *Id.*, 347 So. 2d at 980.

We believe the interpretation of the word "contract" by the Department of Labor and the Mississippi Supreme Court to be both reasonable and necessary. SUAP was enacted to assist those who are totally out of work and desperately look-

ing for a job in a locale marked by chronic unemployment and a depressed job market. I.R.C. §3304 note 201; *Chicago Teachers Union, Local No. 1* v. *Johnson,* 421 F. Supp. at 1264. Congress has manifested a clear intent to deny these benefits to teachers who are temporarily unemployed during the period between terms. S. Rep. No. 94-208, 94th Cong., 1st Sess. 5-6, *reprinted in* 1975 U .S. Code Cong. & Ad. News 377, 382. We see no reason why these petitioners should be singled out for coverage which is denied to other teachers solely on account of their employer's practice of formalizing its teaching contracts at the beginning of the fall term.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record in the case is remanded to the Superior Court with our decision endorsed thereon.

*Stephen M. Rappoport,* for petitioners.

*Joseph R. DeCiantis,* Legal Counsel, Board of Review, for respondents.