Nancy PREZIOSI et al.

v.

DEPARTMENT OF EMPLOYMENT
SECURITY, BOARD OF REVIEW.

Annette PURRO[1] et al.

v.

DEPARTMENT OF EMPLOYMENT
SECURITY, BOARD OF REVIEW.

Nos. 85–465–M.P., 86–392–M.P.

Supreme Court of Rhode Island.

July 14, 1987.

1. Annette Purro joined in the brief of Nancy     Preziosi on March 24, 1987.

**134**

Richard Skolnik (Lipsey & Skolnik), Providence, for plaintiff.

Patricia Hurst, Providence, for Providence School Dept.

## OPINION

SHEA, Justice.

This consolidated action is before this court following our grant of petitions for writs of certiorari filed pursuant to G.L. 1956 (1984 Reenactment) § 42-35-16, as amended by P.L.1984, ch. 167, § 4 of the Administrative Procedures Act. In 85-465-M.P., the thirty-eight petitioners taught within the Providence Public School System during the 1983-84 school year. All applied for unemployment compensation at the end of that school year and were denied benefits by a Department of Employment Security (DES) referee. Both the DES Board of Review and the Sixth Division District Court affirmed the referee's decision. The petitioners now seek review of the decision of the District Court judge upholding the decision of the board of review that denied unemployment compensation to all thirty-eight petitioners.

In 86-392-M.P. the eleven respondents were substitute teachers employed by the Providence School Department during the 1982-1983 academic year. Each were denied between term benefits by DES Referee and Board of Review. However, the Sixth District Court reversed Board of Review decision and awarded benefits to the petitioners.

All of the petitioners may be divided into three classes of substitute teacher: long-term substitute(s) by appointment (LTS), long-term substitute(s) in pool (LTS in pool) and per diem substitute(s). The LTS attained their status by virtue of the fact that they received a long-term assignment to fill the position of a regular teacher on leave for the greater part of a term or for the entire year. The evidence presented at the DES hearing demonstrated that the election of an LTS is for an indefinite period within a stated term and does not continue beyond that term unless the election is extended by the school board.

The LTS in pool attained their status by virtue of the fact that they teach for a total of 135 days or more during one school year. Upon reaching the 135th day, the teacher achieves LTS-in-pool status. The election of an LTS in pool is also for an indefinite period within the school year and that period does not extend beyond the stated term unless it is extended by the school board.

All eleven respondents in 86–392–M.P. were LTS in Pool. Three of the thirty eight petitioners in 85–465–M.P. were per diem substitutes and the remainder were long term substitutes, either LTS or LTS in Pool.

Per diem substitutes are substitute teachers who teach fewer than 135 days during a school year. The LTS and LTS in pool receive full salary, based on an annual salary commensurate with each individual's education and seniority. The LTS receive the salary and benefits from the beginning of their appointments, and LTS in pool receive them retroactively upon teaching 135 days or more. Per diem substitutes receive a flat pay rate of $35 per day without benefits.

In February 1984 the LTS who are petitioners in 85–465–M.P. received a letter from the superintendent of schools informing them that their employment as long-term substitutes would terminate as of the last day of the 1983–84 school year. The letter also informed each LTS that if he or she wished, he or she may "be given preference for an appointment as long-term substitute or probationary teacher when a vacancy appears in your area of certification. In addition, if neither of the above situations exist, day-to-day substitution in your area of certification will be made available to you." The only communication sent to each LTS in pool was the letter informing each one of his or her appointment. The letter also informed them all that their new-found status of LTS in pool would be for an indefinite period and would not extend beyond the term. Per diem substitutes received no formal communication regarding either their present status or their future employment; they would continue instead to be called on an as-needed basis.

General Laws 1956 (1986 Reenactment) § 28–44–68, relating to benefit payments for services with educational institutions, states in pertinent part:

"With respect to services performed * * * in an instructional, research, or principal administrative capacity for an educational institution * * * benefits shall not be paid based on those services for any week of unemployment commencing during the period between two (2) successive academic years * * * to any individual if that individual performs those services in the first of such academic years * * * and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of those academic years or terms."

All thirty-eight petitioners in 85–465–M.P. were denied unemployment compensation soon after the close of the 1983–84 school year because the DES referee found that they had reasonable assurance that they would perform services during the upcoming academic year. The decision of the referee was upheld by the DES Board of Review, whose decision was affirmed by a District Court judge for the Sixth Division. The respondents in 86–392–M.P., however, were granted benefits in a decision rendered in the Sixth District Court that reversed the DES Board of Review.

■ When we review a lower-court judgment on a petition for certiorari, our inquiry is limited to determining whether the record reflects evidence, or reasonable inferences that may be drawn therefrom, to support the findings of the tribunal whose decision is being reviewed. *Guarino v. Department of Social Welfare*, 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980). We agree with the finding of the District Court judge in 85–465–M.P. that the LTS in that case received reasonable assurance of work by virtue of the termination letters dated February 1984. Each letter informed the addressee that he or she either would be considered for another LTS appointment for the upcoming year or would be called for day-to-day substitution. This letter constitutes evidence of reasonable assurance of future service with the school department; therefore, benefits were properly denied. As additional assurance, the LTS were given preference for appointment as probationary teachers when permanent vacancies occurred in their area of certification under the terms of the collective-bargaining agreement between the

Providence Teachers' Union AFT Local No. 958 and the Providence School Committee for the years 1982–85 (the agreement).

The petitioners in 85–465–M.P. have argued that although they may have had reasonable assurance of future employment, that employment was not in the same capacity as that in which they had served during the preceding year. Because of the tremendous difference in salary and benefit packages between the LTS and per diem substitutes, LTS petitioners argue that they are not assured of the same status for the upcoming school year since they may have to accept per diem status with its minimal pay and lack of benefits. We do not agree.

■ The classifications of LTS, LTS in pool, and per diem substitute are included under the general heading of substitute teacher as distinct from the heading of full-time teacher. The distinct classifications may entitle the particular substitute to more pay and a benefit package by virtue of the number of days served as a substitute teacher. These added benefits are mandated by the agreement and by G.L.1956 (1981 Reenactment) § 16–16–1(2), as amended by P.L.1985, ch. 258, § 1 and § 16–7–29. *See Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 248, 251–52, 397 A.2d 889, 892–93, 894–95 (1979). In *Berthiaume* this court recognized the intent of the Legislature to reward substitute teachers monetarily who teach for more than 135 days in a school year for their years of service, training, and experience. *Id.* at 252, 397 A.2d at 895. Neither the agreement nor our statutes purport to redefine a substitute teacher's job status, however, simply because increased pay and benefits have been earned. The fact that a substitute works the required number of days one year does not guarantee that he or she will be given the opportunity to work the same number of days the next year. *See Indianapolis Public Schools v. Review Board of Indiana Employment Security Division,* 487 N.E.2d 1343 (Ind.App.1986) (substitute teacher with eligibility to teach certain number of days substantially reduced for upcoming term cannot collect unemployment benefits during summer term). Whether an individual serves as an LTS, LTS in pool, or per diem substitute during the school year, the classification terminates at the end of that year and the individual's name is returned to the substitute list until classifications may again be assigned or earned the following year. Consequently, regardless of their classifications at the end of the preceding year, substitutes need only a reasonable assurance that they will perform some type of substitute teaching in the upcoming year in order to be disqualified from receiving unemployment benefits during the summer term. *See Patrick v. Board of Review,* 171 N.J.Super. 424, 409 A.2d 819 (1979) (long-term substitute approved for per diem substitution for upcoming term ineligible for unemployment compensation during summer term); *Slominski v. Employment Division,* 77 Or.App. 142, 146–47, 711 P.2d 215, 217 (1985) (despite uncertainty concerning quantity of work inherent in nature of substitute position, substitute teaching in consecutive academic years disqualifies teacher from benefits during summer recess).

*Leissring v. Department of Industry, Labor and Human Relations,* 115 Wis.2d 475, 340 N.W.2d 533 (1983), interpreting an unemployment-compensation statute similar to our own and upon which petitioners rely heavily, is not inconsistent with our conclusion. In *Leissring* two full-time teachers, with guaranteed hours and wages, were laid off at the end of a school year with offers that their names be placed on a substitute-teaching list, with no guaranteed wages or hours, for the upcoming year. The *Leissring* court held that the teachers did not have a reasonable assurance that they would perform services *in any such capacity* as required by the statute. *Id.* at 478, 340 N.W.2d at 534. This is not the issue before us today. These cases may be distinguished from *Leissring* because since petitioners here are substitute teachers faced with the possibility of future substitute service, their job capacities have not been changed. Substitute teaching is by its nature inherently indefinite,

depending as it does on the occurrence of unforeseen vacancies on the teaching faculty. Therefore, since the LTS in these cases received reasonable assurance of some type of substitute teaching for the upcoming year, we find them ineligible to collect unemployment compensation for the summer.

◼ Turning next to the question of whether petitioners classified as LTS in pool and per diem substitutes received reasonable assurance of some type of substitute work for the upcoming school year, we must reach a different conclusion. First, we recognize that reasonable assurance does not mean a guarantee of future employment. The reasonable assurance requirement may be satisfied simply by notice of the fact that the school department may have openings for substitute teachers and that the particular teacher may be called for such work if he or she is willing. The teacher may either accept that offer expressly or imply his or her acceptance through silence. *See Louderback v. Commonwealth Unemployment Compensation Board of Review,* 48 Pa.Commw. 501, 502–06, 409 A.2d 1198, 1199–1200 (1980) (absent evidence of substantial reason for believing individual will not be rehired in September, claimant may not collect summer unemployment benefits). Once reasonable assurance of the possibility of employment for the upcoming year has been given and accepted, the teachers have effectively removed themselves from the employable labor force. Because they have plans to return to teaching in September, they cannot be considered available for work because they are not genuinely and realistically attached to the labor market. *See Loftin v. Daniels,* 268 Ark. 611, 613, 594 S.W. 2d 578, 580 (Ct.App.1980); *Gillis v. Commonwealth Unemployment Compensation Board of Review,* 52 Pa. Commw. 375, 376–78, 415 A.2d 994, 995 (1980); *Cunningham v. Commonwealth Unemployment Compensation Board of Review,* 42 Pa.Commw. 226, 227–30, 400 A.2d 681, 682 (1979).

◼ The DES Board of Review determines what constitutes reasonable assurance after an examination of all relevant facts. *See Goralski v. Commonwealth Unemployment Compensation Board of Review,* 48 Pa.Commw. 39, 41–43, 408 A.2d 1178, 1180 (1979). In addition to notice and the teacher's acquiescence, factors relevant to the determination of reasonable assurance may include seniority, number of days taught during the previous year, and priority placement on the substitute list as determined by the agreement or by seniority preferences.

◼ Although we acknowledge that "reasonable assurance" does not mean teachers must receive written assurance of future employment and that it may be implied from the facts of each case, we find the evidence from which reasonable assurance may be implied in these cases is questionable. *See Aronson v. Commonwealth Unemployment Compensation Board of Review,* 56 Pa.Commw. 177, ——, 424 A.2d 972, 974 (1981) (cannot find reasonable assurance unless teacher has received information on which to base expectation). The only communication received by the LTS in pool in 85–465–M.P. was a notification from the department of public schools that the substitute teacher had been elected to LTS-in-pool status. The letter also informed the addressee that the election was for an indefinite period, not to extend beyond the term unless so extended by the school board. No mention was made of the possibility of substitute teaching in the upcoming school year. The addressee was not informed that his or her name would be included on a substitute list as were LTS. The testimony demonstrated that per diem substitutes likewise received no communication regarding future employment, and although they would be willing to work again as substitutes, they were not made aware of the possibility of future employment. Consequently, the particular situations of the LTS in pool and per diem substitutes in these cases should be reevaluated by DES to determine whether reasonable assurance had been given.[2]

2. In considering on a case-by-case basis the matter of eligibility of LTS in pool, if any, the agency may take into account the fact that some applicants in this category have been compen-

A look at the intended purpose of our unemployment statute sheds further light on the reason for denying unemployment benefits to certain types of school employees. The statutory limitation on the payment of unemployment-compensation benefits to teachers who have a reasonable assurance of returning to work the following academic year is similar to § 203 of the Federal Emergency Jobs and Unemployment Assistance Act of 1974 as amended by § 202 of Title II of the Emergency Compensation and Special Unemployment Assistance Extension Act of 1975 (the act). See 26 USCS § 3304(a)(6)(A)(i). Under an earlier interpretation of the act, this court found it to have been enacted to assist unemployed individuals who are desperately looking for work. *Harvey v. Director of Department of Employment Security*, 120 R.I. 159, 167–68, 385 A.2d 1057, 1062 (1978). This court also found that through the amended § 203 of the act Congress intended to deny benefits to teachers who are temporarily unemployed during a period between academic terms. *Id.* Similarly, we believe the limitation in our statute seeks to preclude the payment of benefits to school employees who, during holidays and summer recesses, are unemployed but who, because they can plan for those occasional periods of unemployment, are not truly experiencing the suffering our employment-security law was intended to alleviate. *See Reskowski v. Commonwealth Unemployment Compensation Board of Review*, 95 Pa.Commw. 280, 283–85, 505 A.2d 380, 382 (1986). Since both the LTS and the LTS in pool have received full salary and benefits for the academic year preceding the summer recess during which they attempt to collect unemployment compensation, they may reasonably plan for the upcoming period of unemployment. We realize that the LTS in pool cannot plan for the summer months so easily as the LTS because they do not earn full salary and benefits until they teach 135 days and thereby become entitled to a retroactive salary. The final result, however, is that those substitutes ultimately receive a full

year's pay and should not be allowed to subsidize their summer vacations by collecting unemployment compensation. This would result in an inequitable situation between fully compensated substitute teachers, those being LTS and LTS in pool, simply because they earned their full compensation through different channels. Both classes of substitutes, then, may be denied unemployment-compensation benefits during the summer months as long as they have reasonable assurance of returning to work during the upcoming year in their capacity as substitutes.

This reasoning does not apply to per diem substitutes, however, as their situation differs markedly from that of a fully compensated substitute. A per diem substitute, that is, a substitute who has taught fewer than 135 days during the academic year, earns $35 per day and receives no benefits. He or she is not compensated in amounts based on an annual salary. That substitute may work 1 day or 134 days during the year. Per diem substitutes' names appear at the bottom of the list of possible substitute teachers; they will be the last to be called to work. They do not benefit from preferences provided to long-term substitutes by the agreement. What may constitute reasonable assurance for these per diem substitutes could change from year to year, depending upon those factors referred to earlier in this opinion. Declining student enrollment may cause an increase in layoffs of regular teachers for the following year. As those teachers take their positions at the top of the substitute list, the relative position of each per diem at the bottom of the list worsens. Therefore, DES must decide whether reasonable assurance has been supplied to an individual per diem substitute on a case-by-case basis.

In conclusion, we find that the petitioners in 85–465–M.P. classified as LTS by appointment received reasonable assurance and are excluded from receiving unemployment benefits. The LTS in pool and the per diem substitutes in these consolidated

sated at an annual salary rate and, therefore, consider whether unemployment benefits would

commence before the start of the subsequent school year.

cases, however, may not have received reasonable assurance and their cases should be reevaluated by DES. In the future, substitutes who achieve a long-term classification by virtue of appointment or sufficient number of days of teaching, are excluded from the receipt of unemployment benefits during the summer recess by § 28–44–68 as long as DES finds that they received reasonable assurance of future service in the capacity of substitute teacher. Per diem substitutes must be evaluated on a case-by-case basis with the unique situation of each kept in mind.

For the above-stated reasons, the petitions for certiorari are granted. Those portions of the judgments below which are not consistent with this opinion are quashed, the remaining portions of those judgments are affirmed and the papers of the case are remanded to the District Court with our decision endorsed thereon.