## UNIVERSITY OF RHODE ISLAND

v.

## DEPARTMENT OF EMPLOYMENT AND TRAINING, Board of Review.

No. 95–30–M.P.

Supreme Court of Rhode Island.

March 14, 1997.

Louis J. Saccocio, for Plaintiff.

William G. Brody, Providence, Marc B. Gursky/Leslie Ann Busetti, Seekonk, MA, for Defendant.

## OPINION

PER CURIAM.

The petitioner, the University of Rhode Island (URI or the university), has asked us to review a District Court order that one of its full-time lecturers, Sandra Quinn (Quinn), is entitled to collect unemployment-compensation benefits for a portion of the 1994 summer break between URI's academic years. The university had notified Quinn that it intended to downsize her job assignment for the next academic year from a full-time to a three-quarter-time teaching position. The District Court upheld a decision of the Board of Review of the Department of Employment and Training (DET) awarding Quinn unemployment-compensation benefits.

The university had employed Quinn as a full-time lecturer since the 1980s. On June 20, 1994, URI confirmed its earlier oral notification and informed Quinn by letter that she would be reassigned to a three-quarter-time teaching position for the following academic term, with a loss in salary of approximately $7,500. However, on July 28, 1994, URI changed its mind and notified Quinn that her status as a full-time lecturer had been restored for the upcoming term. Nonetheless, Quinn sought unemployment benefits for the period from May 28, 1994, through July 28, 1994. The director of the DET issued a written decision awarding such benefits to Quinn. That award was upheld by a referee, DET's Board of Review, and the District Court.[1] The university then petitioned this court for certiorari, claiming that Quinn's reassignment to a three-quarter-time teaching position disqualified her from receiving unemployment compensation for any portion of the summer between URI's academic years. The university claims that because Quinn's reassignment gave her a reasonable assurance that she would be performing instructional services in some teaching capacity during the next academic term (albeit in a job involving less work and less compensation than her previous employment in a similar capacity), Quinn was ineligible to receive unemployment benefits. Thus, "[t]he question that [it] frames in all but words/ Is what to make of a diminished thing."[2] For the reasons set forth below, we agree with URI and therefore quash the District Court's order.[3]

When reviewing a decision of the board of review, the District Court is governed by the limitations set forth in G.L.1956 § 42–35–15(g) of the Administrative Procedures Act

1. The referee modified the decision of the director by awarding Quinn benefits beginning May 22, 1994, rather than May 28, 1994. Both the board of review and the District Court upheld the modified award.

2. Robert Frost, "The Oven Bird," *in Complete Poems of Robert Frost* 150 (Henry Holt and Co. 1949).

3. This matter came before us pursuant to an order directing the parties to appear and show cause why the issues raised in the petition for certiorari should not be decided without further briefing and argument. Having heard their arguments and reviewed their memoranda, we perceive no cause and shall therefore proceed to decide the issues presented at this time.

(APA).[4]  *See Baker v. Department of Employment and Training Board of Review,* 637 A.2d 360, 362 & n. 3 (R.I.1994).  In an APA appeal the District Court "must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence on questions of fact."  *Baker,* 637 A.2d at 363.  But the District Court must determine whether the decision is "[m]ade upon unlawful procedure" or "[a]ffected by other error of law."  Section 42–35–15(g)(3) and (4).

■  Our review of the District Court's APA decisions is confined to questions of law and of whether any legally competent evidence exists to support the decision.  Section 42–35–16; *see also DePetrillo v. Department of Employment Security, Board of Review,* 623 A.2d 31, 34 (R.I.1993); *Barrington School Committee v. Rhode Island State Labor Relations Board,* 608 A.2d 1126, 1138 (R.I.1992).

The District Court upheld the award of unemployment benefits to Quinn by determining that she was not disqualified by G.L. 1956 § 28–44–68(1).  Section 28–44–68(1) reads as follows:

"With respect to services performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution (including elementary and secondary schools and institutions of higher education) [unemployment compensation] *benefits shall not be paid based on those services for any week of unemployment commencing during the period between two (2) successive academic years* or during a similar period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract, *to any individual if that individual performs those services in the first of such academic years* (or terms) and *if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of those academic years* or terms; and Provided, That § 28–44–63 shall apply with respect to those services prior to January 1, 1978."  (Emphases added.)

The District Court based its decision in the present case upon its prior holding in *Foster School Committee v. Department of Employment & Training, Board of Review,* A.A. No. 92–383 (M. Ippolito, 1994).  There it determined that a long-term substitute teacher who was reassigned to per diem work was entitled to unemployment benefits pursuant to § 28–44–68(1).  The court relied upon Federal Program Letter No. 4–87 circulated by the Secretary of Labor in 1987.  That document was issued by the federal government to assist states in interpreting the term "reasonable assurance."  Section 3 of the program letter defines "reasonable assurance" as a "written, oral, or implied agreement that the employee will perform services in the same or similar capacity during the ensuing academic year, term, or remainder of a term."  Section 4(c) suggests that "[r]easonable assurance exists only if the economic terms and conditions of the job offered in the second period are not substantially less (as determined under State law) than the terms and conditions for the job in the first period."  The District Court in *Foster* stated that it felt compelled to defer to Federal Program Letter No. 4–87 because the availability of federal funds for the state's unemployment system is dependent upon the state's compli-

---

4.  General Laws 1956 § 42–35–15(g) provides, in pertinent part:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.  The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences [*sic* ], conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

ance with the Federal Unemployment Tax Act (FUTA). Pursuant to FUTA, a state must have its unemployment laws certified by the Secretary of Labor. 26 U.S.C. § 3303(b). To be certified, a state's unemployment law must contain a provision similar to 26 U.S.C. § 3304(a)(6)(A)(i), which in pertinent part reads:

> "with respect to services in an instructional * * * capacity for an educational institution * * * compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms * * * to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

Rhode Island satisfied this requirement with the enactment of § 28–44–68(1). Apparently, the District Court believed that to retain federal funding, this statute should be construed in a way that is consistent with the Secretary of Labor's interpretations of 26 U.S.C. § 3304(a)(6)(A)(i), the federal analog to § 28–44–68(1). Consequently, the District Court in *Foster* adopted the Secretary of Labor's interpretation of "reasonable assurance" as defined in Federal Program Letter No. 4–87.

However, in so ruling, the District Court in *Foster*, and again in this case, strayed from our decision in *Preziosi v. Department of Employment Security, Board of Review*, 529 A.2d 133 (R.I.1987). There we unanimously determined that long-term substitute teachers who were reassigned to per diem employment were disqualified from receiving unemployment benefits under § 28–44–68(1). The District Court in *Foster*, slip op. at 9, acknowledged the applicability of *Preziosi* to this situation, but it nevertheless concluded that "the Supreme Court would *voluntarily* defer to Program Letter 4–87 and overrule that portion of *Preziosi* to the contrary."

■ This is the first time we have had the opportunity to decide whether to defer to the Secretary of Labor's 1987 program letter.

We decline to do so. Federal Program Letter No. 4–87 is not binding authority upon this court since it is merely an administrative interpretation of federal law. *See Harvey v. Director of the Department of Employment Security*, 120 R.I. 159, 163 n. 6, 385 A.2d 1057, 1060 n. 6 (1978). Therefore, we are not bound by the interpretation of "reasonable assurance" set forth in the program letter and instead may rely upon our previous decisions construing that term.

■ It is well settled that an opinion of this court declares the law in Rhode Island and that law must be followed by the lower courts of our judicial system, regardless of whether that court or any of its judges agree or disagree with our holding. *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 426, 267 A.2d 683, 685 (1970). As the court of last resort in this state our decisions "are not final because they are infallible, but rather they are infallible only because they are final." *Id.* at 426 & n. 2, 267 A.2d at 685 & n. 2 (citing *Brown v. Allen*, 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469, 533 (1953) (Jackson, J. concurring)). Therefore, lower courts, such as the District Court in the present case, must follow our established precedents.

■ We believe that our decision in *Preziosi* controls the present matter and that, therefore, the District Court erred in upholding the award of unemployment benefits on the basis of its previously rendered decision in *Foster* that declined to follow *Preziosi.*

In *Preziosi* the petitioners were long-term substitute teachers who were reassigned to per diem work for the upcoming academic term. Despite the reasonable assurance given to them that they would retain employment for the following year, the teachers argued that their per diem status was reemployment in a different capacity with a substantially lower salary and benefit package than their previous teaching positions. *Preziosi*, 529 A.2d at 136. In rejecting this argument, we stated that "regardless of their classifications at the end of the preceding year, substitutes need only a reasonable assurance that they will perform some type of substitute teaching in the upcoming year in order to be disqualified from receiving unem-

ployment benefits during the summer term." *Id.* We also held that reasonable assurance "does not mean teachers must receive written assurance of future employment and that it may be implied from the facts of each case * * *." *Id.* at 137. Although respondents have urged us to limit our holding in *Preziosi* to substitute teachers, we believe that *Preziosi* should not be read so narrowly.

Pursuant to § 28–44–68(1), teachers or other persons employed in an instructional capacity are disqualified from receiving unemployment-compensation benefits if they have been given reasonable assurance of employment "in any such capacity" for the next academic term. Here, URI notified Quinn both by oral communication and by letter that she would be reassigned to a three-quarter-time teaching job. Relying upon our holding in *Preziosi* and our interpretation of § 28–44–68(1), we conclude that Quinn was thereby given reasonable assurance that she would return to work in some type of teaching capacity for the upcoming term.

The fact that Quinn's reassignment to a three-quarter-time teaching position would have resulted in a comparative salary diminution is not dispositive of the question of whether Quinn received reasonable assurance under our holding in *Preziosi*.[5] The communications between URI and Quinn confirming her reassignment to a teaching position for the upcoming academic year were sufficient to satisfy the requirement of reasonable assurance as mandated by § 28–44–68(1) and as interpreted in our decision in *Preziosi*.

Therefore, for the above reasons the petition for certiorari is granted, the District Court's order is quashed, and the papers of the case are remanded to the District Court with our decision endorsed thereon.

---

5. In *Woonsocket School Committee v. Department of Employment and Training, Board of Review,* 635 A.2d 266 (R.I.1993), we upheld the award of benefits to clerical employees whose employment was reduced from 360 to 190 days (and to only 10 days during the summer vacation rather than the duration of the summer) with very little notice. The board of review in that case determined that reasonable assurance did not exist since the economic terms and conditions of the new employment were substantially less than those of the previous position. *Id.* at 267. Although we upheld the board of review's decision, we noted that clerical jobs "are not the typical educational positions that are tailored to the academic year." *Id.* In addition, we stressed the lack of sufficient notice given the employees that their status was being altered. For these reasons we believe that our holding in *Woonsocket* is not applicable to the determination of the issue presently before us.