**FOSTER–GLOCESTER REGIONAL
SCHOOL COMMITTEE**

v.

**BOARD OF REVIEW, Department
of Labor and Training et al.**

No. 2002–381–M.P.

Supreme Court of Rhode Island.

July 16, 2004.

Gregory Piccirelli, for Plaintiff.

Donald G. Elbert, Tiverton, (Board of Rev.), John E. DeCubellis, Jr., Narragansett, (for Michael Bailey), for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

The Foster–Glocester Regional School Committee (school committee) seeks review by writ of certiorari of a District Court decision affirming a judgment granting unemployment benefits by the Board of Review of the Rhode Island Department of Labor and Training (board) to a schoolteacher, Michael Bailey (Bailey), whose employment had been terminated for inappropriate conduct involving female students. Having granted the writ and considered the written submissions and oral arguments of the parties, we now proceed to address the three primary issues that

the school committee raised on appeal: (1) whether the District Court erred in ruling that the school committee's complaint was moot; (2) whether the board should have been collaterally estopped from relitigating the question of whether Bailey's discharge was for disqualifying circumstances; and (3) whether the board erred by failing to give any evidentiary weight to the transcripts of a previous arbitration hearing. For the reasons set forth herein, we quash the judgment of the District Court.

## Facts and Travel

Michael Bailey had been employed as a teacher by the school committee for approximately sixteen years. On December 14, 1999, he was terminated from his employment as a physical education teacher at Ponaganset High School for alleged inappropriate behavior with four female students. Bailey appealed his termination to arbitration pursuant to a collective bargaining agreement. Arbitration hearings were held between August 2000 and January 2001, during which the school committee presented testimony from the students who said they were victims of Bailey's alleged misconduct, the high school principal, the school superintendent, and other witnesses. On April 10, 2001, the arbitrator issued his decision, finding that there was clear and convincing evidence that Bailey's actions were "inappropriate for a teacher[,]" and that the school committee had just cause to terminate his employment. The arbitration award was confirmed by the Superior Court on October 12, 2001.[1]

While the arbitration was still pending, Bailey filed a claim for unemployment benefits, which the director of the Rhode Island Department of Labor and Training granted on February 27, 2001. The di-

rector determined that Bailey was discharged under "non-disqualifying circumstances" as provided by G.L.1956 § 28–44–18. The school committee appealed from the director's decision. A referee of the board held a hearing on March 20, 2001, and subsequently affirmed the director's award of benefits to Bailey. The school committee appealed from the referee's decision, and the board held a de novo hearing on April 25, 2001.

Finding the evidence insufficient to prove that Bailey's discharge was for disqualifying circumstances, the board sustained the director's decision. One member dissented. The board said that the school committee presented "no direct evidence with respect to the alleged misconduct," and chose to rely solely on the transcript from the arbitration hearing. The majority noted that the school committee's counsel had been offered an opportunity to call witnesses, to request that witnesses be subpoenaed, and/or to present evidence demonstrating the unavailability of the witnesses, but that counsel "refused" each of these offers. The board, citing its long-held policy that "uncorroborated hearsay evidence alone is not sufficient to establish a finding of fact," held that the school committee had not met its burden of proof because the committee had presented no direct evidence to corroborate the hearsay evidence in the transcript. Undaunted by its 0–3 record in the Department of Labor and Training, the school committee filed an appeal in District Court.

After a hearing and conference before a magistrate, the District Court remanded the proceedings to the board to consider the admissibility of the "previously excluded sworn testimony contained in the

---

1. The Superior Court originally confirmed the arbitrator's decision on April 30, 2001, but it was vacated by stipulation of both parties on May 7, 2001.

transcripts before the Arbitrator." The District Court also directed the board to reconsider its *per se* exclusion of the transcripts as hearsay evidence in light of this Court's decision in *DePasquale v. Harrington*, 599 A.2d 314 (R.I.1991). The board responded that it had accepted the transcript into evidence for full review before issuing its decision. The board also noted the transcript had been admitted as hearsay evidence, and no other direct evidence had been presented before the board. The earlier decision of the board was then adopted and incorporated by reference.

The school committee, once again, filed an appeal with the District Court. On appeal, the District Court ruled that the school committee's complaint was moot and that it presented no justiciable case or controversy because Bailey already had received all the benefits to which he was entitled, and those benefits were not recoverable by the school committee. The court also ruled that collateral estoppel did not apply in this case because the arbitration decision had not been confirmed at the time when the board issued its decision. Finally, the court ruled that the board's decision to grant unemployment benefits to Bailey was not clearly erroneous, nor arbitrary and capricious, particularly in light of the broad discretion given to the board in examining evidence.

We granted the school committee's petition for writ of certiorari pursuant to § 28–44–55 on November 22, 2002.

### Standard of Review

 This Court, in reviewing cases brought under the Administrative Procedures Act, G.L.1956 chapter 35 of title 42, is limited to reviewing questions of law. *Turner v. Department of Employment Security, Board of Review*, 479 A.2d 740, 742 (R.I.1984) (citing *Powell v. Department of Employment Security, Board of Review*, 477 A.2d 93, 95–96 (R.I.1984)). On certiorari, this Court will not weigh the evidence; "we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision." *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1124 (R.I.2000) (per curiam) (citing *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 459 (R.I.1996)). Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Id.* at 1125 (quoting *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 684 (R.I.1998)). "This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact." *Tierney v. Department of Human Services*, 793 A.2d 210, 213 (R.I.2002) (citing *Technic, Inc. v. Rhode Island Department of Employment and Training*, 669 A.2d 1156, 1158 (R.I.1996)).

Pursuant to § 42–35–15(g), which also governs our review, this Court may:

"affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

See, e.g., Arnold v. Rhode Island Department of Labor and Training Board of Review, 822 A.2d 164, 167 (R.I.2003); Rhode Island Temps, Inc., 749 A.2d at 1124.

### Mootness

■ The school committee argues that the District Court erred in ruling that the complaint was moot. The District Court held that the complaint was moot because all of the unemployment benefits had been paid to Bailey before a final decision was made on the appeal and are not reimbursable. Furthermore, the school committee has elected to be a reimbursable employer and therefore must reimburse the employment security fund for the money paid to Bailey; thus the school committee no longer has a financial stake in the proceedings.

The school committee contends that such a finding "effectively precludes any municipal reimbursable employer from appealing an adverse decision of the Board." It maintains that the Court should review this case because the same circumstances are capable of repetition, yet may evade review. The District Court reasoned that these same facts are not likely to recur, stating that:

"in order for the same issue to be revisited, a party (1) having been informed that a hearing officer would not find uncorroborated hearsay (in the form of prior testimony) to be persuasive and (2) having been invited to present live witnesses would have to (3) adamantly refuse to do so and also (4) refuse to make

a showing of the unavailability of those same witnesses."

We conclude, however, that instead of the narrow set of circumstances set out by the District Court, the focus of our appellate review should center on the more general question of whether the board abused its discretion by disregarding hearsay evidence because no corroborating evidence was offered. We examine, therefore, whether in this context the issue is moot under our established jurisprudence.

■ It is well established that a case is moot "if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." In re New England Gas Co., 842 A.2d 545, 553 (R.I.2004) (quoting Cicilline v. Almond, 809 A.2d 1101, 1105 (R.I.2002) (per curiam)). Nevertheless, a determination of mootness may not end our judicial review. This Court will review an otherwise moot case when the issues raised are of extreme public importance and likely to recur in such a way as to evade judicial review. Id. at 554 (citing Cicilline, 809 A.2d at 1105–06). Matters demonstrating extreme public importance usually implicate "important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." Id. (quoting Cicilline, 809 A.2d at 1106).

We conclude that in the case at hand, whether or not the school committee has a financial stake in the outcome of this particular case, the payment of unemployment benefits is integrally related not only to a person's livelihood, but also to the public fisc. Furthermore, we hold that the case involves a question of law that is capable of repetition but may evade review. In this case, more than twenty-six weeks passed from Bailey's first application for employment benefits until the date that the decision of the District Court was issued. Be-

cause unemployment benefits are limited to a maximum of twenty-six weeks, this issue is clearly capable of evading review by our Court.

In this case, it is likely that the board will continue to be faced with situations in which transcripts from arbitration hearings or other proceedings pertaining to an employee's termination are offered into evidence without corroboration. The question of whether the board must give such transcripts some consideration is an issue that certainly is capable of repetition. Therefore, it is important for us to address this issue now to give appropriate guidance to the board and future litigants.

## Collateral Estoppel

 The school committee next argues that the arbitrator's decision should have precluded the board from relitigating whether Bailey's discharge was for disqualifying circumstances. "Under the doctrine of collateral estoppel, 'an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" *George v. Fadiani*, 772 A.2d 1065, 1067 (R.I.2001) (per curiam) (quoting *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000)). Subject to situations in which application of the doctrine would lead to inequitable results, we have held that courts should

apply collateral estoppel[2] when the case before them meets three requirements: (1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; (3) the issue or issues in question are identical in both proceedings. *Lee v. Rhode Island Council 94, A.F.S.C.M.E., AFL–CIO, Local 186*, 796 A.2d 1080, 1084 (R.I.2002) (per curiam) (citing *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1141 (R.I.2002)).

 The Superior Court confirmed the arbitration decision on October 12, 2001, and judgment was entered on October 17, 2001. "[A]n arbitration award that is confirmed by the Superior Court is equivalent to a final judgment in an action at law." *Mulholland Construction Co. v. Lee Pare & Associates, Inc.*, 576 A.2d 1236, 1237 (R.I.1990) (citing *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935, 937 (R.I.1983)). Because the board issued its decision on May 2, 2001, well before the Superior Court's confirmation of the arbitration award, the board clearly was not precluded from making a decision on whether Bailey's termination was for "disqualifying misconduct."

The District Court, however, erred in rendering its decision because all three of the requisite elements of collateral estoppel exist here. First, Bailey's interests

---

**2.** The doctrine of *res judicata* involves both the concepts of "claim preclusion" and "issue preclusion." 1 Restatement (Second) *Judgments 2d* ch. 1, Intro. at 1, 2 (1982). *Res judicata* or claim preclusion "relates to the effect of a final judgment between the parties to an action and those in privity with those parties." *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I.1994) (citing *Providence Teachers Union, Local 958, American Federation of Teachers, AFL–CIO v. McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974)). This claim-preclusion doctrine "pre-

cludes the relitigation of *all* the issues that were tried or might have been tried in the original suit." *Id.* (Emphasis added.) The doctrine of collateral estoppel or issue preclusion, however, "makes conclusive in a later action on a *different* claim the determination of issues that were actually litigated in a prior action." *Id.* (Emphasis added.) Thus, the issue-preclusion rule may apply even if the claims asserted in the two proceedings are not identical. As discussed above, issue preclusion or collateral estoppel, rather than claim preclusion, applies to this case.

were fully represented in both the arbitration proceeding and the unemployment-compensation proceeding.[3] The arbitrator was a lawyer who conducted the wrongful-discharge arbitration pursuant to the rules of the American Arbitration Association. The labor union, the National Education Association, to which Bailey belonged as a member, was a party to the arbitration and represented Bailey's interests at the arbitration hearings. The labor union employed an attorney to present witnesses and to conduct direct and cross-examination of witnesses during the arbitration hearing. In addition, an attorney represented Bailey as his personal counsel at the hearings. Thus, the arbitration provided Bailey ample opportunity in a judicial-type proceeding to challenge the school committee's evidence that supported his termination from employment for alleged misconduct. *See Bailey v. Metropolitan Property and Liability Insurance Co.*, 24 Mass.App.Ct. 34, 505 N.E.2d 908, 910, 911 (1987) (holding that a plaintiff had a fair opportunity to litigate his claim when he initiated a commercial arbitration in which a lawyer served as the arbitrator and in which the rules of the American Arbitration Association governed the proceedings).

Next, the District Court should have deemed the arbitration award a final judgment for collateral-estoppel purposes. In *Graziano v. Rhode Island State Lottery Commission*, 810 A.2d 215, 220–21 (R.I. 2002), this Court accorded *res judicata*

effect to a federal district court judgment that became final after the First Circuit Court of Appeals affirmed it while identical claims between the same parties were pending on appeal to this Court. We held in *Graziano* that, even though "the defense of *res adjudicata* could not be raised in the Superior Court," it was "properly raised before this Court since the federal judgment became final while these issues were pending on appeal before us." *Id.*

Here, in October 2001, the Superior Court confirmed the arbitration award and no party appealed from that judgment. As a result, the award ripened into a final judgment for collateral-estoppel purposes. *Mulholland Construction Co.*, 576 A.2d at 1237. Although the board issued its decision on May 2, 2001—*before* the Superior Court confirmed the arbitration award— the District Court did not issue its decision and enter a judgment on review of Bailey's unemployment-compensation claim until June 2002, approximately eight months *after* the Superior Court confirmed the award. Therefore, as this Court did in *Graziano*, the District Court should have taken into account the finality of the arbitrator's award, even though the Superior Court had not yet confirmed the award when the board issued its decision.[4] We hold, therefore, that the Superior Court's confirmation of the arbitrator's award converted that award into a final judgment for collateral-estoppel purposes.

---

3. Bailey was a party to the unemployment-compensation proceeding. The National Education Association of Rhode Island and the Foster–Glocester School Committee were the parties in the arbitration hearing. Bailey attended all the arbitration hearings and was represented by counsel. Additionally, in its written brief, appellee conceded that "the record supports a finding of privity of the parties."

4. The District Court found that "there is no evidence in this record that the arbitrator's decision herein was confirmed by the Superior Court." The Superior Court, however, confirmed the arbitration award in October 2001—well before the magistrate's decision in June 2002. Under these circumstances, the District Court should have inquired whether the Superior Court had confirmed the award and it should have taken judicial notice of same.

 Lastly, an arbitrator's findings on factual issues raised during an arbitration proceeding can have collateral-estoppel effect in later claims for unemployment benefits. *See In re Guimarales*, 68 N.Y.2d 989, 510 N.Y.S.2d 558, 503 N.E.2d 113, 115 (1986) (mem.); *In re Ranni*, 58 N.Y.2d 715, 458 N.Y.S.2d 910, 444 N.E.2d 1328, 1330 (1982) (mem.). With some limited exceptions and qualifications, "a valid and final award by arbitration has the same effects under the rules of *res judicata*, subject to the same exceptions and qualifications, as a judgment of a court." 2 Restatement (Second) *Judgments 2d* § 84 at 286 (1982) (Emphasis added.). *See E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1188 (R.I.1994) (holding that *res judicata* applied to bar plaintiffs from suing an insurance provider when the claims previously had been determined by arbitration). The court in *In re Ranni*, 458 N.Y.S.2d 910, 444 N.E.2d at 1330, held that an unemployment-benefits proceeding to determine if an employee engaged in proved misconduct—thereby making him ineligible for unemployment-compensation benefits—naturally included an assessment of the employee's conduct leading to his termination. The employee's insubordination had been conclusively established in the previous arbitration proceeding. *Id.* As a result, the court held that his finding precluded the employee from relitigating the same factual issue before the Unemployment Insurance Appeal Board. *Id.*[5]

Section 28–44–18 made the board responsible for determining whether the school committee terminated Bailey from his employment as a teacher for "proved misconduct" before he submitted his claim for unemployment-compensation benefits. Misconduct is defined in § 28–44–18 as:

> "deliberate conduct in willful disregard of the employer's interest, or a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence. * * * [T]his section shall be construed in a manner that is fair and reasonable to both the employer and the employed worker."

Here, the factual issues relating to Bailey's alleged misconduct that the arbitrator decided were identical to the factual issues that the board faced in deciding whether Bailey had engaged in "proved misconduct." Bailey's inappropriate physical contact and verbal communications with students were the basis for the arbitrator's determination that just cause existed to terminate his employment. The arbitrator found that "there is clear and convincing evidence that [Bailey] did what the witnesses described [including inappropriate physical touching of his students] and that those actions were inappropriate for a teacher." Because of this proved misconduct, the arbitrator decided that the school committee had just cause to terminate Bailey from his employment. The board also had to decide whether Bailey engaged in the same alleged miscon-

---

**5.** The court in *In re Guimarales*, 68 N.Y.2d 989, 510 N.Y.S.2d 558, 503 N.E.2d 113 (1986) (mem.), clarified its decision in *In re Ranni*, 58 N.Y.2d 715, 458 N.Y.S.2d 910, 444 N.E.2d 1328, 1330 (1982) (mem.), holding that, although the "Appeal Board" was "bound by the arbitrator's factual findings," it was still "free to make * * * independent additional factual findings and form [its] own independent conclusion as to whether such conduct constituted 'misconduct' for purposes of unemployment insurance." *In re Guimarales*, 510 N.Y.S.2d 558, 503 N.E.2d at 115.

duct to assess whether Bailey's behavior constituted "proved misconduct" under § 28–44–18. Because the Superior Court already had entered an unappealed judgment confirming the arbitrator's award— an award finding that Bailey had engaged in such conduct—the District Court should have accorded the arbitrator's factual findings collateral-estoppel effect and ruled that Bailey was precluded from relitigating the issue of whether he engaged in this same misconduct. We hold that, in this situation, sufficient identity of the issues existed to require the District Court to give collateral-estoppel effect to the arbitrator's factual findings that Bailey engaged in inappropriate physical contact and verbal communications with his students. The District Court should have so ruled, applied the doctrine of collateral estoppel to the unemployment-compensation case before it, and vacated the board's award of benefits.

■■■■ We are mindful that a court's application of the collateral-estoppel doctrine " 'is capable of producing extraordinarily harsh and unfair results' " and thus a court should not apply the doctrine "mechanically" in situations in which it would lead to inequitable results. *Casco Indemnity Co.*, 755 A.2d at 782. Although circumstances may exist in which just cause for termination would not constitute the equivalent of "proved misconduct" under § 28–44–18, this is not one of them. Given the arbitrator's finding by clear and convincing evidence that Bailey engaged in the charged misconduct by physically touching and verbally communicating with his students in an inappropriate manner, such proven misconduct, as a matter of law, constituted "deliberate conduct in willful disregard of the employer's interest" under § 28–44–18. *See Lockheed Martin Corp. v. Unemployment Appeals Commission*, 876 So.2d 31, 33, 2004 WL

1175228 at *2 (Fla.Dist.Ct.App. 2004) (per curiam) (employee's inappropriate sexual touching of fellow employees violated employer's policy against sexual harassment and thus was misconduct sufficient to disqualify him from receiving unemployment benefits); *In re Ferro*, 283 A.D.2d 828, 725 N.Y.S.2d 721, 721 (N.Y.App.Div.2001) (employee's inappropriate grabbing of and gestures towards fellow employee was offensive behavior that constituted disqualifying misconduct for purposes of unemployment insurance benefits); *Autoliv ASP, Inc. v. Department of Workforce Services*, 29 P.3d 7, 12–13 (Utah Ct.App. 2001) (employee's actions of sending sexually explicit material to fellow employees via the employer's computer system violated "a universal standard of behavior" in the workplace and thus disqualified him from receiving unemployment benefits).

For these reasons, the District Court erred in failing to apply the doctrine of collateral estoppel to the board's decision. Rather, the court should have ruled that, given the Superior Court's final judgment confirming the arbitrator's finding that Bailey had engaged in inappropriate touching of and verbal communications with his students, such actions, as a matter of law, constituted "proved misconduct" that barred the board from awarding unemployment compensation to Bailey.

### Evidentiary Issue

■■■■ We also conclude that the board and the District Court erred by refusing to give any evidentiary value to the transcripts of the arbitration hearing, which presented evidence that Bailey had been terminated for just cause. Under § 28–44–18 of the Rhode Island Employment Security Act, an employee dis-

charged for proven misconduct is not eligible for unemployment benefits if the employer terminated the employee for disqualifying circumstances connected with his or her work. *See St. Pius X Parish Corp. v. Murray,* 557 A.2d 1214, 1217 (R.I. 1989). The employer has the burden of proof and must present evidence of the employee's misconduct. *See Technic, Inc.,* 669 A.2d at 1158.

Section 28–44–44 governs the procedure followed by the board in determining whether an employee has engaged in disqualifying conduct. Section 28–44–44 provides in part:

"A reasonable opportunity for a fair hearing shall be promptly afforded all interested parties. An appeal tribunal shall inquire into and develop all facts bearing on the issues and shall receive and consider evidence without regard to statutory and common law rules."

This statute allows the board broad discretion in deciding what types of evidence it will receive and consider.[6] However, this Court may reverse the board's decision if the Court finds the decision "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 42–35–15(g)(6).

The arbitration transcripts at issue in this case contain witness testimony of nine witnesses, including testimony of the alleged victims, the principal and the superintendent of the school, as well as, Michael Bailey. Each witness was cross-examined

by counsel in extensive proceedings over the course of five months. Although the record shows that the board did accept the transcript into evidence, we hold that the board's refusal to give any weight to the arbitration transcript was arbitrary and capricious and clearly an abuse of discretion.

As this Court explained in *DePasquale,* 599 A.2d at 316, the purpose of the hearsay exclusion is to prevent juries from rendering a verdict based on "unreliable or confusing testimony." This danger is not present in administrative hearings because the hearing officer is trained to be an expert in his or her capacity, unlike the layperson on a jury; therefore, hearsay evidence is admissible in administrative hearings. *Id.* "Hearsay evidence may vary significantly in its credibility and probative value, depending on its source and its similarity to evidence that is intrinsically trustworthy." *Id.* Presumably, a hearing officer with "substantial expertise in matters falling within his or her agency's jurisdiction" should be able to judge whether the evidence offered is trustworthy, credible, and probative, regardless of whether it is hearsay. *See id.*

Even though the board is exempted from § 42–35–10(a), it does provide some evidentiary guidelines for administrative hearings. Section 42–35–10(a) provides that "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded." *See, e.g., DePasquale,* 599 A.2d at 315–16.

 Although the board has extremely broad discretion in determining what

---

**6.** General Laws 1956 § 42–35–18(c)(1) exempts the board from § 42–35–10 of the Administrative Procedures Act, which governs the rules of evidence in other administrative proceedings. Section 42–35–10(a) provides:

"Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the superior courts of this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs."

weight to place on hearsay evidence, in the present case, its decision to place no weight at all on otherwise relevant, material and nonrepetitious evidence based on an exceedingly vague reference to a "long-held" policy was an abuse of discretion.

In its written submissions, the school committee argues that recorded testimony, to which the witnesses were sworn and subject to fully developed cross-examination, is admissible under Rule 804(b)(1) of the Rhode Island Rules of Evidence "even in criminal trials where a witness is unavailable. It is inconceivable that such evidence would not be considered by the Board."

The board counters that the school committee did not even attempt to establish that the various witnesses were indeed unavailable. Nor did the school committee avail itself of the several opportunities afforded to it by the board "to offer, at least, some direct evidence to corroborate the hearsay." Furthermore, it asserts that the appeal before the board was a *de novo* hearing, and "[i]f the Board was required to unequivocally accept the transcript of the arbitration hearing as the truth and was bound by the decision of the arbitrator, the Board's statutory authority would be usurped by the arbitrator."

In its brief, the board also said, "the Board accepted the transcript and arbitrator's decision as evidence[,] but[ ] determined that the weight of the evidence, standing alone, did not rise to the level necessary for the [school committee] to sustain its burden of proof in this case." This assertion, however, is not supported by the record. In its decision of September 25, 2001, following remand from the District Court, the board said:the arbitration hearing as the truth and was bound by the decision of the arbitrator, the Board's

statutory authority would be usurped by the arbitrator."

In its brief, the board also said, "the Board accepted the transcript and arbitrator's decision as evidence[,] but[ ] determined that the weight of the evidence, standing alone, did not rise to the level necessary for the [school committee] to sustain its burden of proof in this case." This assertion, however, is not supported by the record. In its decision of September 25, 2001, following remand from the District Court, the board said:

> "It is also clear from the transcript [of the Board of Review hearing] that the Board attempted several times to advise the employer's counsel that the transcript [of the arbitration] was being admitted as hearsay evidence. As was stated in the Board's decision of May 2, 2001, the employer presented only hearsay evidence and no direct evidence at the hearing before the Board of Review."

In its decision of May 2, 2001, the board said:

> "To meet its burden * * *, the employer must present proof of the claimant's misconduct. This Board has long held that uncorroborated hearsay evidence alone is not sufficient to establish a finding of fact. Therefore, it must be concluded that the employer has not met its burden of proof. The evidence presented in this case is solely hearsay in nature. The employer has refused to present even the slightest direct evidence to serve as corroboration of the hearsay. * * * Without a scintilla of direct evidence, the Board has no choice but to conclude that the employer's [*sic* ] has not met its burden of proof under Section 28–44–18."

It is clear from the record, therefore, that the board did not exercise its independent discretion and determine that the weight

of the evidence, as contained in the transcript of the arbitration hearing, did not rise to the level necessary to sustain the school committee's burden of proof. It simply admitted the transcript into evidence, but refused to consider it without corroborating evidence. This, we conclude, was an abuse of discretion.

■■■ We make several observations. First, we see no reason why the school committee should have been required to present as witnesses the victims of Bailey's inappropriate conduct when a transcript of their testimony before the arbitrator was available. All such witnesses were sworn and subjected to cross-examination at the arbitration hearing. The board is not constrained by the rules of evidence, nor even the less stringent requirements of the Administrative Procedures Act. As a deliberative tribunal, it has been granted a remarkably free rein and wide latitude in evidentiary matters. Its desire, however, to exclude unreliable evidence is commendable, as is its wariness of unsubstantiated hearsay evidence, even though hearsay evidence is properly admissible in its proceedings. *DePasquale*, 599 A.2d at 316.

The issue here, however, is not the admissibility of the evidence. The board has acknowledged, in response to the District Court's direct inquiry, that it "accepted the transcript in question for full review prior to the issuance of its decision." And because the Superior Court had not yet confirmed the arbitration award allowing the board to give the arbitrator's factual findings collateral-estoppel effect, the board retained discretion, after independently reviewing the evidence, to determine how much weight, if any, to afford the evidence and the arbitration findings. Concomitantly, the school committee took the risk that the victims' testimony would not be as compelling or credible in printed form as it might have been had they testified in person. Nevertheless, once having admitted the transcript into evidence, the board may not simply ignore it.

Second, in its brief, as well as in its decision, the board implied that even "the slightest direct evidence" offered to corroborate the hearsay evidence could sustain the school committee's burden of proof. Although the direct testimony of one of the victims would undoubtedly have been helpful to the board's determination of whether Bailey's conduct rose to the level of "proved misconduct" under § 28–44–18, we fail to see how the corroboration by a nonpercipient witness to the alleged acts, such as the school's principal or superintendent, might have so substantially tipped the balance of the burden of proof in favor of the school committee.

Finally, we note, as the board correctly observed, "[u]nder Rule 804(b)(1) of the Rules of Evidence, former recorded testimony would have clearly been admissible if the declarants were unavailable * * *." The linchpin of this particular hearsay exception is the opportunity to develop such testimony by direct, cross, or redirect examination. In a civil action, the party against whom the testimony is offered need not have been a party to the previous proceeding, provided that a party with a similar motive and interest had an opportunity to so develop the testimony. R.I.R. Evid. 804(b)(1).

We again emphasize that the admissibility of the transcript is not the issue here. Rather, it is the board's arbitrary decision not to consider the transcript without any corroborating evidence, no matter how slight that evidence might be.

The board cites no authority for its "long-held" policy not to allow a party to sustain its burden of proof based exclusively upon uncorroborated hearsay evidence. In its decision, the District Court noted that the board "was applying very old case law" and cited *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938) for the proposition that in an administrative pro-

ceeding "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence." As we said in *DePasquale,* 599 A.2d at 316, however, "[h]earsay evidence may vary significantly in its credibility and probative value, depending on its source and its similarity to evidence that is intrinsically trustworthy."

Rule 804(b)(1) is based on its federal counterpart Rule 804(b)(1) of the Federal Rules of Evidence. The advisory committee notes, Rule 804 exception (1), to the federal rules explain:

"Former testimony does not rely upon some set of circumstances to substitute for oath and cross-examination, since both oath and opportunity to cross-examine were present in fact. The only missing one of the ideal conditions for the giving of testimony is the presence of trier and opponent ('demeanor evidence'). This is lacking with all hearsay exceptions. Hence it may be argued that former testimony is the strongest hearsay and should be included under Rule 803 * * *."

Thus, although the rule clearly expresses a preference for the production of the witness if available, it recognizes that former testimony has significant probative value provided the party against whom it is being offered, or in a civil proceeding a party with a similar motive and interest, had an opportunity to fully develop the testimony.

Here, at the hearing before the board, the school committee offered the transcript of the arbitration hearing to support its contention that Bailey was discharged for "proved misconduct." Section 28-44-18. The evidence in question was the testimony of several witnesses at an arbitration proceeding pursuant to a collective bargaining agreement to determine whether the school committee had "just cause" to terminate Bailey's employment. Bailey was represented by his labor union's counsel as well as his personal counsel and had full opportunity to cross-examine the witnesses, including the victims of his inappropriate conduct. The parties before the board had similar motives and interests to the parties in the arbitration hearing.

The board argues on appeal that there is no identity of issues in the two proceedings. The applicable standard in the arbitration was "just cause," whereas the central issue before the board was whether Bailey had engaged in misconduct that would disqualify his entitlement to collect unemployment benefits. For the purposes of this appeal, we need not determine whether, as the board asserts, that each proceeding required different findings of fact and burdens of proof. Notwithstanding the differing standards, the evidence that the school committee sought to introduce in each proceeding was exactly the same.

Contrary to the board's contention, it was not "required to unequivocally accept the transcript of the arbitration hearing as the truth"; thus, its statutory authority would not have been usurped by the arbitrator. The board would have been well within its discretionary authority to review the transcript independently, make its own findings of fact, and draw its own conclusions. The former testimony and the arbitrator's findings were entitled to probative force, however. Even if the board could not have given the arbitration award collateral-estoppel effect because the Superior Court had yet to confirm the award, after admitting the transcript into evidence, the board was at least required to consider the testimony of the various witnesses at the arbitration hearing, determine what weight such testimony should be accorded, and make its own findings of fact. The failure to do so, we conclude, was an abuse of discretion.

## Conclusion

Accordingly, the judgment of the District Court is quashed, and the record in this case shall be remanded to the District Court with our decision endorsed thereon for the entry of a judgment in favor of the school committee.

Justice FLAHERTY did not participate.