Karen **ELIAS–CLAVET**

v.

**BOARD OF REVIEW, Rhode Island Department of Employment and Training et al.**

**No. 2009–152–M.P.**

Supreme Court of Rhode Island.

March 22, 2011.

Stephen E. Breggia, Esq., Providence, for Petitioner.

Donald G. Elbert, Jr., Esq., Department of Employment and Training, Melissa A. Thomson, Esq., Pawtucket School Department, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Karen Elias–Clavet was employed as a substitute teacher by the Pawtucket School Department during the 2007–2008 school year. On June 24, 2008—shortly after the school summer recess began—Ms. Elias–Clavet filed a claim for unemployment benefits. That claim was denied by the Department of Labor and Training (DLT), based upon the between-terms disqualification provision of G.L.1956 § 28–44–68(2). Subsequent appeals before a referee, a DLT Board of Review, and ultimately the District Court, upheld the denial of benefits for the petitioner. Ms. Elias–Clavet filed a petition for writ of certiorari with this Court seeking appellate review of the decision denying her claim for unemployment benefits, which

we granted. On January 31, 2011, the parties appeared before us to show cause why the issues raised by this appeal should not be decided without further briefing and argument. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. We affirm the judgment of the District Court.

### Facts and Travel

The petitioner, Karen Elias–Clavet, was hired as a per-diem substitute teacher by the Pawtucket School Department during the 2007–2008 school year. From March 4, 2008, until the end of the school year, she was placed in a long-term assignment, taking the place of a teacher who was on military leave. In all, she worked eighty-nine and one-half days during the academic year. When the school year ended, Ms. Elias–Clavet received a letter from the school department informing her that "you have 'reasonable assurance' to return in the same capacity as a substitute teacher for the 2008–2009 academic year * * *." The bottom of that letter set forth the definition of "reasonable assurance" as provided by the Legislature in a 1998 amendment. In that amendment, the General Assembly defined the term "reasonable assurance" to mean:

1. The record is not clear about whether Ms. Elias–Clavet signed and returned the form provided within the June 9, 2008 mailing, confirming her interest in returning to the Pawtucket School Department to continue working as a per-diem substitute. A computer-generated claim data sheet in the record indicates that the name of that form was "employer separation form," and that the form was returned. However, we need not resolve this ambiguity conclusively to decide this case. In *Preziosi v. Department of Employment Security, Board of Review*, 529 A.2d 133, 137 (R.I.1987), we said:

"The reasonable assurance requirement may be satisfied simply by notice of the fact

" 'Reasonable assurance' means a written agreement by the employer that the employee will perform services in the same or similar capacity during the ensuing academic year, term or remainder of a term." Section 28–44–68(a), as amended by P.L.1998, ch. 113, § 1.

Also, the June 9 mailing was accompanied by a form that was referred to in the letter; the letter directed, "if you wish to be re-employed by the Pawtucket School Department in September 2008, please fill out the enclosed form no later than July 31, 2008." The opening sentence of that form itself communicated, "[i]f you desire to continue your employment as a substitute teacher during the 2008–2009 school year, please sign this form and return it * * *."[1]

On June 24, 2008, Ms. Elias–Clavet filed a claim for unemployment security benefits with the DLT. That claim was denied because it was determined that the claimant was ineligible for benefits under the provisions of § 28–44–68(2) of the Rhode Island Employment Security Act, which says:

"With respect to services in any other capacity for an educational institution, including elementary and secondary schools and institutions of higher education, compensation payable for weeks

that the school department may have openings for substitute teachers and that the particular teacher may be called for such work if he or she is willing. *The teacher may either accept that offer expressly or imply his or her acceptance through silence. See Louderback v. Commonwealth Unemployment Compensation Board of Review*, 48 Pa.Commw. 501, 502–06, 409 A.2d 1198, 1199–1200 (1980) (absent evidence of substantial reason for believing individual will not be rehired in September, claimant may not collect summer unemployment benefits)." (Emphasis added.)

of unemployment beginning on or after April 1, 1984, on the basis of the services shall be denied to any individual for any week which commences during a period between two (2) successive academic years or terms if that individual performs those services in the first of those academic years or terms and there is a reasonable assurance that the individual will perform those services in the second of those academic years or terms, except that if compensation is denied to any individual for any week under this subdivision and the individual was not offered an opportunity to perform the services for the educational institution for the second of the academic years or terms, the individual shall be entitled to a retroactive payment of the compensation for each week for which the individual filed a timely claim for compensation and for which compensation was denied solely by reason of this subdivision."

In denying the claim based upon the statutory between-terms disqualification provision, the Director of DLT wrote: "As you performed services in the most recent academic year and have a contract or written assurance of rehire in the next academic year/term, your educational wages may not be used in your claim for the period * * * between the two academic years/terms."

Contending that she did not have a reasonable assurance of returning the following school year under substantially the same employment circumstances, Ms. Elias–Clavet filed a timely appeal from the director's decision on July 23, 2008. A hearing on that appeal was held on September 17, 2008, before a referee of the board of review for the DLT. At that hearing, the claimant and an employer representative of the Pawtucket School Department both testified.[2] Various exhibits were introduced into the record, and the referee questioned both the claimant and the employer representative. The testimony established: (1) that Ms. Elias–Clavet was at first a day-to-day substitute teacher during the 2007–2008 term, and that she ended the year in a long-term substitute position; (2) that she worked eighty-nine and one-half days during the 2007–2008 school year, short of the 135 days of work required to alter a substitute's per-diem status; and (3), that she returned to the same substitute position at the beginning of the 2008–2009 school year on terms and conditions substantially the same as those in the previous year. The testimony also established that the letter received by Ms. Elias–Clavet was a "generic" letter sent to all substitutes, and that the very nature of substitute status is such that school officials have no way of knowing exactly what substitute positions might be available during an upcoming term.

The referee's decision of September 23, 2008, affirmed the decision of the director. The referee concluded that the claimant was subject to the above quoted between-terms benefits disqualification of § 28–44–68(2). Specifically, the referee said:

> "The evidence and testimony presented at the hearing establish that the claimant had reasonable assurance by written agreement from the employer that she would perform services in the same capacity and under the same terms and economic conditions in the ensuing academic year as she had in the prior academic year."

Undeterred, Ms. Elias–Clavet timely appealed the decision of the referee to the board of review, which reviewed the decision of the referee pursuant to § 28–44–47 of the Rhode Island Employment Security Act. Section 28–44–47 provides that the

**2.** The petitioner was represented by legal counsel at the hearing.

board of review "may affirm, modify, or reverse the findings or conclusions of the [referee] solely on the basis of evidence previously submitted or upon the basis of any additional evidence that it may direct to be taken." On October 20, 2008, the board of review issued a one-page decision, which affirmed the finding and conclusions of the referee and denied the appeal. This denial was in accordance with § 28–44–51, which says, "[f]or the purposes of judicial review, an appeal tribunal's decision from which an application for appeal has been denied by the board of review shall be deemed to be the decision of the board of review * * *."

Ms. Elias–Clavet then filed a complaint in District Court, seeking judicial review of the administrative decision of the board of review under G.L.1956 § 42–35–15 of the Administrative Procedures Act. Jurisdiction for such review resides in the Sixth Division of the District Court pursuant to § 28–44–52, and the standard of review in complaints so postured is provided by § 42–35–15(g).[3]

On April 28, 2009, the District Court issued a written decision affirming the board of review. In determining that the agency's decision was supported by legally competent evidence on the record, the District Court ruled:

"The issue before the Court is whether the Board's determination that the Referee's decision was a proper adjudi-

cation of the facts and that the decision was supported by reliable, probative, and substantial evidence in the record and whether or not it was clearly erroneous:

"The evidence and testimony presented at the hearing establish that the claimant had reasonable assurance by written agreement from the employer that she would perform services in the same capacity and under the same terms and economic conditions in the ensuing academic year as she had in the prior academic year."

Final judgment was entered, and Ms. Elias–Clavet filed a petition for writ of certiorari seeking appellate review of the decision of the District Court based on § 42–35–16 of the Administrative Procedures Act. We granted that petition on September 14, 2009.

### Standard of Review

 "When this Court examines the judgment of the [District Court] in administrative proceedings, we are restricted by § 42–35–16 * * *." *Johnston Ambulatory Surgical Associates, Ltd. v. Nolan*, 755 A.2d 799, 805 (R.I.2000) (quoting *Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board*, 650 A.2d 479, 485 (R.I.1994)). "Pursuant to * * * § 42–35–16, this court employs a limited standard of review when

**3.** General Laws 1956 § 42–35–15(g) provides that we may:

"affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) Made upon unlawful procedure;

"(4) Affected by other error of law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

See, e.g., *Foster–Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1012–13 (R.I.2004); *Arnold v. Rhode Island Department of Labor and Training Board of Review*, 822 A.2d 164, 167 (R.I.2003).

reviewing appeals from a decision of an administrative agency pursuant to a writ of certiorari." *DePetrillo v. Department of Employment Security, Board of Review,* 623 A.2d 31, 34 (R.I.1993). "On certiorari, this Court will not weigh the evidence." *Foster–Glocester Regional School Committee v. Board of Review,* 854 A.2d 1008, 1012 (R.I.2004). Rather, our inquiry is limited to determining whether any legally competent evidence exists within the record as a whole, or whether reasonable inferences may be drawn therefrom, to support the decision being reviewed, or whether the District Court committed error of law in reaching its decision. *Id.* (citing *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review,* 749 A.2d 1121, 1124 (R.I.2000)); *Preziosi v. Department of Employment Security, Board of Review,* 529 A.2d 133, 135 (R.I. 1987) (citing *Guarino v. Department of Social Welfare,* 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980)).

■■■ "Legally competent evidence is defined as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" *Foster–Glocester Regional School Committee,* 854 A.2d at 1012 (quoting *Rhode Island Temps, Inc.,* 749 A.2d at 1125). "Moreover the grounds for reversal of an administrative decision must appear on the face of the record before us." *DePetrillo,* 623 A.2d at 34 (citing *Berberian v. Department of Employment Security, Board of Review,* 414 A.2d 480, 482 (R.I.1980)).

## Analysis

■■■ Our review of the entire record in this case leads us to conclude that there is legally competent evidence—and reasonable inferences that may be drawn therefrom—to support the agency's denial of benefits to petitioner. *See Foster–Glocester Regional School Committee,* 854 A.2d at 1012. Furthermore, we can see no grounds that would support a determination that the District Court committed an error of law in reaching its decision.

Specifically, we are of the opinion that the letter dated June 9, 2008, to Ms. Elias–Clavet, with its reference to the statutory definition of reasonable assurance, when considered in conjunction with the response form sent with the mailing, satisfies the written "reasonable assurance" provision of § 28–44–68(a).[4]

The petitioner relies heavily upon our decision in *Preziosi* to advance the argument that review of a per-diem substitute's employment-benefits claim must be conducted on an examination of all relevant facts. *Preziosi,* 529 A.2d at 138 (holding that whether per-diem substitutes have received reasonable assurance of commensurate work in the coming school year must be determined on a fact-specific, case-by-case basis); *see also Baker v. Department of Employment and Training Board of Review,* 637 A.2d 360, 363–64 (R.I.1994). In *Preziosi,* 529 A.2d at 134, the circumstances of forty-nine claimants were reviewed. Of those forty-nine, only three were per-diem substitutes. *Id.* at 134–35. We held that the claims for benefits of those three per-diem substitutes had been improperly denied under the statute be-

---

4. We need not and do not address the fact that petitioner was working in a long-term substitute position from March 4, 2008, to June 18, 2008. We have held that long-term substitutes who have been reassigned to per-diem employment are disqualified from re-

cciving unemployment benefits under § 28–44–68. *See Preziosi,* 529 A.2d at 136; *accord University of Rhode Island v. Department of Employment and Training,* 691 A.2d 552, 555 (R.I.1997).

cause they had not been provided reasonable assurance of return to work in the next academic year. *Id.* at 138–39. However, in *Preziosi,* the per-diem substitutes had received no communication whatsoever "regarding either their present status or their future employment" on which to base an expectation of return. *Id.* at 135. Furthermore, in *Preziosi,* we noted that there were several factors relevant to the determination of reasonable assurance in the per-diem substitute context, including: notice, teacher's acquiescence, seniority, numbers of days taught in the previous school year, and priority placement on a substitute list. *Id.* at 137.

Although the relevant facts in this case were not well articulated in the referee's decision, our review of the record as a whole nonetheless satisfies us that a particularized examination did occur. Here, petitioner (1) worked half the relevant academic year, (2) received written notice in terms clearly designed to demonstrate a good-faith expectation of reemployment, and (3) had a clear opportunity, indeed an invitation, to affirmatively acquiesce by responding to confirm her continuing interest in employment. Although the record gives no indication that petitioner would have any advantage in terms of seniority or assurances of priority placement on a substitute list, from the record as a whole, it seems quite clear that Ms. Elias–Clavet was on Pawtucket's list of approved substitutes. *See Brouillette v. Department of Employment and Training Board of Review,* 677 A.2d 1344, 1346 (R.I.1996) (affirming the denial of benefits under § 28–44–68, because per-diem substitute had reasonable assurance after she had worked fifty-five days during the prior school year, and her name remained on the East Provi-

dence list for per-diem substitutes); *see also Hansen v. Commonwealth, Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 440, 422 A.2d 707, 708 (1980) (finding that the claimant had reasonable assurance and upholding the denial of benefits to per-diem substitute after the court could find no evidence "to suggest that the school would deviate from its list when selecting substitute teachers").

Finally, we address petitioner's contention that our decision in *Preziosi* may be of diluted value, because in 1998 the General Assembly amended § 28–44–68 to require that "reasonable assurance" must be "a written agreement by the employer." The petitioner argues in her brief that, through the written-agreement requirement, "the [L]egislature has, for all intents and purposes, supplanted the standard of 'reasonable assurance' with a higher binding contract standard." We do not agree. In *Preziosi,* 529 A.2d at 137, we said that "reasonable assurance does not mean a guarantee of future employment." We further observed that "[s]ubstitute teaching is by its nature inherently indefinite, depending as it does on the occurrence of unforeseen vacancies on the teaching faculty." *Id.* at 136–37. The fact that reasonable assurance must now be provided in a writing does not change our holding that the term is not to be construed as constituting "a guarantee of future employment" to a per-diem substitute teacher. *Id.* at 137.

Rather, we agree with other jurisdictions that have held that because of the inherent uncertainties of the substitute-employment relationship, the heart of the issue is whether the parties in good faith expect the relationship to continue.[5] At

---

5. *See Garrison v. Arizona Department of Economic Security,* 156 Ariz. 167, 750 P.2d 1370, 1374 (App.1988) (upholding denial of benefits

in the per-diem context when the district provided a reappointment letter and there was no evidence of bad faith presented to undermine

the hearing before the referee, the employer representative testified that the letter mailed to the petitioner was generic, and that the nature of the per-diem substitute position is such that no one can predict the exact needs of the school department. Although the precise demand for substitute teachers cannot be predicted with mathematical certitude, the fact that there will be some demand certainly is expected. Here, in the absence of evidence of bad faith by the Pawtucket School Department, and given the lack of specific allegations or facts that undermine the sincerity of the June 9 letter, we hold that the petitioner was provided with reasonable assurance as defined by § 28–44–68(a).

## Conclusion

For the foregoing reasons, we affirm the decision of the District Court. The petition for certiorari is denied, and the writ heretofore issued is quashed. The record is remanded to the District Court with our decision endorsed thereon.

the letter's stated intent of providing reasonable assurance); *Davis v. District of Columbia Department of Employment Services,* 481 A.2d 128, 131 (D.C.1984) (affirming denial of benefits and embracing the principle that reasonable assurance in the per-diem substitute context is not a guarantee of employment but rather a good-faith expectation between the parties that the substitute employment relationship will recommence); *Jennings v. Employment Security Department of the State of Washington,* 34 Wash.App. 592, 663 P.2d 849, 853 (1983) (setting forth that as to reasonable assurance in the circumstance of substitutes, "[t]he critical question is whether the parties in good faith expect the substitute employment relationship to resume").