Justice Goldberg,
dissenting.
I respectfully dissent from the decision of the majority. The single issue in this case is whether any -legally competent evidence exists in the record to support the findings made by the referee, adopted by the board of review (the board), and subsequently affirmed by the District Court. Although the majority correctly identifies the issue, the majority then proceeds to reevaluate and weigh the evidence presented and concludes that “the record does not contain legally competent evidence to support a finding that [the claimant’s] conduct was connected to his work * * (Emphasis added.) It is my opinion that this conclusion impermissibly exceeds the scope of this Court’s review and is not the Court’s function on certiorari.
The board adopted the findings made by the referee, and which findings determined that this claimant was prohibited from collecting unemployment benefits because he was terminated for proved misconduct connected with his work. See G.L. 1956 § 28-44-18(a) (providing that “an individual who has been discharged for proved misconduct connected with his or her work” is ineligible .to receive unemployment compensation). The District Court, on de novo review, affirmed this holding after a careful and detailed consideration of the evidence. This Court’s review on certiorari, therefore, “is limited to ‘an examination of the certified record to determine if there is any legally competent evidence therein to support the [board’s] decision.’ ” Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000) (quoting Barrington School Committee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992) (emphasis added)). “On certiorari, this Court will not weigh the evidence.” Elias-Clavet v. Board of Review, 15 A.3d 1008, 1013 (R.I. 2011) (quoting Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1012 (R.I. 2004)). Rather, “we give deference to the factual findings of the administrative agency.” Reilly Electrical Contractors, Inc. v. State Department of Labor and Training ex rel. Orefice, 46 A.3d 840, 844 (R.I. 2012) (quoting Auto Body Association of Rhode Island v. State Department of Business Regulation, 996 A.2d 91, 95 (R.I. 2010)); see also Foster-Glocester Regional School Committee, 854 A.2d at 1012 (“This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact,” (quoting Tierney v. Department of Human Services, 793 A.2d 210, 213 (R.I. 2002))).
This Court “must uphold the [board’s] conclusions when they are supported by any legally competent evidence in the record.” Rocha v. State Public Utilities Commission, 694 A.2d 722, 725 (R.I. 1997) (emphasis added). This Court must uphold the board’s decision “even in a case in which the [C]ourt ‘might be inclined to view the evidence differently and draw inferences *630 different from those of the [board].’ ” Nolan, 755 A.2d at 805 (quoting Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board, 650 A.2d 479, 485 (R.1.1994)).
In this case, the majority was inclined to “view the evidence differently” and indeed “dr[ew] inferences different from those of the agency.” See Nolan, 755 A.2d at 805. Specifically, the majority drew an inference that claimant’s conduct was not workplace related because “Morancey was ‘blocked’ from [claimant’s] Facebook page,” the Facebook post was not “authored * * * on any electronic device belonging to his employer,” and “the content of the posting] [did not] relate to [claimant’s] job performance.” However, these inferences overlook the evidence in the record supporting the board’s findings.
Indeed, the record indicates that claimant was scheduled to be terminated that morning for refusing to sign the company policy, and according to Morancey, claimant had been “creating a lot of ill-will.” This is the conduct that led to the final warning which the record discloses was short-lived. Within hours of the final warning, claimant proceeded to “post[ ] derogatory comments about his supervisor on Facebook[.]” The claimant’s conduct was found to be “not in the employer’s best interest.” The District Court reviewed this same evidence and agreed with the board, further concluding that claimant “baited [his supervisor] into searching out his Fa-cebook page” such that his supervisor “had to look, and after looking, he saw [the Facebook posts], and having seen, he had * * * no choice but to terminate [claimant].” The District Court was satisfied that “on the particular facts of the instant case,” that “these comments [were brought] into the workplace”—by claimant—thus providing the “needed ‘connection’ with the workplace.” In light of this uncontradicted and competent evidence, it is my opinion that the majority has exceeded the boundary of certiorari review and erred in failing to defer to the findings made by the board and affirmed by the District Court.
Furthermore, I agree with the majority that this Court has yet to consider the use of social media in the employment context, or freedom of speech and employment policies for internet postings; those issues are not before the Court in this case. This case is nothing more than a disgruntled, recalcitrant employee, who tearfully begged his employer for another chance to keep his job and then smugly baited him into viewing his Facebook posts. He was fired later that same day for conduct that arose within hours of the final warning—a Facebook post that referred to his supervisor as someone who is not a real person.[1] If he was not terminated for misconduct connected to his work, then why was he feed? Consequently, I dissent.

. I do note, however, that Beagan may learn a hard lesson based on the law of unintended consequences; because anyone, including po *631 tential employers with internet access, can read this opinion on the World Wide Web.