DECISION
Appellant Richard Gomes ("Gomes") brings this appeal from a decision by the Rhode Island Department of Labor and Training ("the Department"). The Department found that Gomes was not entitled to vacation pay from Appellee JPC Pizza, Inc., d/b/a Ronzio Pizza ("JPC"). Jurisdiction is pursuant to GL. 1956 § 42-35-15.
 I Facts Procedural History
According to the administrative record, Gomes was an employee of JPC from January 17, 2001 to December 4, 2004. He served as assistant manager for a Ronzio's Pizza franchise operated by JPC. Gomes worked approximately 40 hours per week for approximately seven dollars per hour. According to Gomes, upon his hire, he discussed vacation availability and pay with Joseph Choquette, representative of JPC. That discussion forms the basis of this dispute.
Although no written vacation policy was introduced at the hearing, it is undisputed that Gomes was entitled to some vacation pay pursuant to the terms of his employment. During his nearly four years with JPC, Gomes received three weeks' vacation pay: one week's vacation pay *Page 2 
on each of April 11, 2003; March 12, 2004; and July 23, 2004. Payroll records — both the employer's records and Gomes's pay stubs — reflect the vacation pay disbursements, and were made part of the administrative record. There is no dispute that the three weeks of vacation time that the parties agree Gomes was owed were paid in full.
In December of 2004, Gomes resigned from his position with JPC. Gomes claims that JPC owed him an additional two weeks of vacation pay, for a total of five weeks' paid vacation time. JPC disagreed, stating that the three weeks of pay Gomes was already paid constituted payment in full for the vacation pay that accrued to Gomes during his employment with JPC.
On January 15, 2005, Gomes filed a petition pro se with the Department of Labor and Training's Division of Labor Standards. Gomes alleged that JPC unlawfully withheld vacation pay that was owed to him in accordance the vacation policy as he understood it, which he claims was explained to him by Choquette at the time of his hire. Gomes sought the additional two weeks' unpaid vacation time — $760.00 in wages — citing Rhode Island General Laws § 28-14-4 for support. Subsection 4(b) of § 28-14 provides:
 "Whenever an employee separates or is separated from the payroll of an employer after completing at least one year of service, any vacation pay accrued or awarded . . . shall become wages and payable in full. . . ."
On November 9, 2005 the Department conducted a hearing pursuant to § 28-14-19. At the hearing, Gomes testified that when he was hired, Choquette, a representative of JPC, explained that after one year as assistant manager he would receive one week's vacation annually, and two weeks per year thereafter. (Tr. 4:21-23.) After approximately four years of employment, Gomes claims he is owed five weeks of vacation time, calculated as follows: one week accrued after the first year, two weeks accrued after the second year, and two weeks accrued after the third year. Gomes admits that payroll records reflect the payment of three *Page 3 
weeks of wages claimed as vacation time, though the payments were miscategorized as bonuses in several places. Thus, Gomes claims he is owed an additional two weeks' vacation pay.
Joseph Choquette of JPC testified that assistant managers "accrue a [week's] vacation after one year and two weeks after two years." (Tr. 8:5-7.) Choquette stated, however, that Gomes was not entitled to five weeks' total vacation time. Choquette explained that for assistant managers, the first year of employment is not counted in the vacation-time equation; it is merely a "waiting period" during which vacation time does not accrue. (Tr. 8:23.) Choquette testified that the waiting period here was Gomes's first year of employment, August 2001 to August 2002. Choquette also called the waiting period "the accrual time," although no vacation time accrues during this period. (Tr. 8:17-18.) According to Choquette, Gomes only "started to earn [vacation] hours" during his second year of employment, August 2002-August 2003, after the year of "accrual" or "waiting." (Tr. 8:15-9:17-24, 10:8.) Moreover, Choquette explained that although vacation time accrues throughout a year, it is not eligible for use until the following year. (Tr. 9:17-10:1-9.) Choquette testified that if a week's vacation was earned between August 2001 and August 2002, that time could not be used until after August 2003. (Tr. 9:17-10:1-9.)
Choquette went on to explain that Gomes's third year, August 2003 to August 2004, was the first year in which Gomes began to accrue two weeks' vacation pay. Thus, Choquette calculated that, working for over three years, Gomes accrued only three weeks' vacation time: No time accrued during the first year since it was the so-called "waiting" or "accrual" period. One week accrued during Gomes's second year, which was the first year in which he began to accrue vacation time. This first week was eligible to be used during his third year. Two weeks accrued during his third year, for which the employee was eligible to use during his fourth year. *Page 4 
When pressed by the hearing examiner, Choquette explained the reasoning behind the "waiting period" required of assistant managers: this differentiated the assistant manager from the manager (Tr. 17:11-24), the only other employee at the Ronzio's franchise to receive paid vacation time. (Tr. 8:5-7.) Choquette testified that for a manager, "[a]fter one year, he received one week; and after two years, he received two weeks." (Tr. 18:1-4.) Unlike the assistant manager, however — who "accrue[s] a [week's] vacation after one year and two weeks after two years," (Tr. 8:5-7) — the manager's vacation is not modified by the addition of a "waiting period" before vacation time begins to accrue. Thus, if using the straightforward calculation used for a manager, Gomes would be entitled to five weeks' vacation. (Tr. 18:2-4.)
Choquette did not recall discussing the vacation policy with Gomes (Tr. 18:5-8), but testified that new employees would be verbally informed of JPC's unwritten vacation policies (Tr. 10:19-21). Gomes testified that Choquette discussed the policy with him and Justin Lavoie, franchise manager, in front of the store in August 2001. (Tr. 4:21-24, 18:20-22.) JPC did not present Lavoie as a corroborating witness at the hearing.
Gomes testified that while he was able to take vacation or get paid for unused vacation time during the 2003 to 2004 period, at other times upper management denied Gomes's vacation requests. Gomes testified that management denied one request for vacation because they "d[id]n't have the money." (Tr. 19:19-22.) Choquette stated that "there definitely was a time when it was monetary" when payment for unused vacation time was denied, but "mostly any time any vacation was denied," the denial was because of scheduling conflicts. (Tr. 20:16-20.) Choquette admitted that in October of 2004, he refused Gomes' vacation time request for financial reasons. (Tr. 21:4-8.)
However, it was not until Gomes's resignation that Choquette checked the status of how *Page 5 
many weeks' vacation Gomes had earned. (Tr. 21:8-13.) Despite denial of the October 2004 vacation request for financial reasons, Choquette testified that upon applying his version of the vacation policy, Gomes had already used all of his earned vacation time. (Tr. 21:8-13.)
The Hearing Officer issued her decision on November 23, 2005. The Hearing Officer noted that Rhode Island does not require employers to provide vacation time and pay to their employees; thus, the parties entering into an employment agreement are able to set their own terms and conditions of vacation time. Rhode Island law will protect such policies or agreements through § 28-14-4(b). The issue here would be discerning the terms of the admitted policy concerning vacation time for Gomes. The Hearing Officer stated that Gomes, the claimant, bore the burden of proving by clear and convincing evidence that he accrued a total of five weeks' vacation time during his nearly four years of employment with JPC. Since Gomes had been paid for three weeks' vacation time, Gomes bore the burden of demonstrating specifically that he was entitled to an additional two weeks' vacation pay, $760.00. See Dec. of Hearing Officer (Nov. 23, 2005) (hereinafter Dec.).
The Hearing Officer found that Gomes did not meet his burden of proving entitlement to the additional vacation time by clear and convincing evidence. The Hearing Officer reasoned that the dispute hinged on Gomes's testimony — that the agreement resulted in vacation time accruing immediately upon hire; against Choquette's testimony — that the agreement resulted in Gomes's accrual of vacation time after a one-year waiting period. The Hearing Officer noted that Gomes "has offered no other evidence than his testimony which is directly contradicted by [Choquette]." (Dec.) The Hearing Officer concluded that Gomes's testimony, because it was contradicted by Choquette's testimony, "falls short of the clear and convincing evidence which is necessary to prove the case." (Dec.) The Hearing Officer dismissed the claim. *Page 6 
Gomes filed a timely appeal with the Superior Court pursuant to G.L. 1956 § 42-35-15. On appeal, Gomes argues that the Hearing Officer's decision should be overturned because it was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and was arbitrary or capricious or characterized by an abuse of discretion. Gomes further urges the Court to overturn the decision, noting that a remand would waste time and resources. The Department of Labor and Training objected. The Department contends that the contradictory testimony and lack of dispositive documentary evidence support the dismissal of the petition on the basis that the petitioner did not meet his burden of proof. It is clear to this Court, however, that Gomes's version of the policy was supported by the documentary evidence — the payroll records. JPC's version of the policy is not corroborated by testimony from Lavoie, who was present when, allegedly, JPC's version of the policy was explained to Gomes. Further, the employer has not presented any written vacation policies, nor any contemporaneous memorandum of the alleged conversation with Gomes, Choquette, and Lavoie. The Department claims the Director's decision is reasonable and based on the evidence contained in the record.
 II Standard of Review Rhode Island General Laws § 42-35-15(g) guides this Court in its review of the decision by the Rhode Island Department of Labor and Training's Division of Labor Standards:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions, or decisions *Page 7 
which are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error o[f] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing the agency decision, the Superior Court trial justice "shall not substitute [his or her] judgment for that of the agency as to the weight of the evidence on questions of fact."Interstate Navigation Co. d/b/a The Block Island Ferry v. Div. ofPub. Util. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) (quotation omitted). "Rather, the trial justice must uphold the agency's conclusions when they are supported by legally competent evidence on the record. Id
(citing Rocha v. State Pub. Util. Comm.,694 A.2d 722, 725 (R.I. 1997).
Although agencies have "extremely broad discretion in determining what weight to place on [] evidence," a decision that "place[s] no weight at all on otherwise relevant, material and nonrepetitious evidence . . . [is] an abuse of discretion." Foster-GlocesterReg'l Sch. Comm. v. Bd. of Review, Dept. ofLabor Training, 854 A.2d 1008, 1018-19 (R.I. 2004). Additionally, "[a]n administrative decision can be vacated `if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record.'"Connelly v. Pers. Appeal Bd., No. 00-1022, 2001 WL 587487 (R.I. Super. May 21, 2001) (quotingNewport Shipyard, Inc. v. Rhode Island Comm'n for HumanRights, 484 A.2d 893 (R.I. 1984)). Particularly where the agency disregards "the sole probative evidence," the administrative decision is clearly erroneous. LibertyMut. Ins. Co. v. Janes, 586 A.2d 536, 538 (R.I. 1991). *Page 8 
 III Analysis
Gomes argues that the Hearing Officer's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Gomes contends that the Hearing Officer's reasoning that the case consisted only of the contradictory testimony evinces the Hearing Officer's disregard of substantial probative evidence in the record. Specifically, Gomes claims that the Hearing Officer disregarded the payroll records, which are consistent with Gomes's testimony but inconsistent with Choquette's. (Appellant's Br. 2-3.)
The Department contends that its decision is supported by reliable evidence in the hearing record, specifically, the employer's testimony. (Appellee's Mem. In Opp'n to Appeal 2-3.)
Gomes correctly points out that the testimony is not the only evidence contained in the administrative record. The record also contains JPC's payroll records and Gomes's pay stubs. The Hearing Officer clearly disregarded these documents (collectively, "the payroll records"), and rested her decision only on the contradictory testimony of Gomes and Choquette. The payroll records reveal the timing of the vacation payments, which illuminates the parties' testimony. Specifically, the payroll records bolster the credibility of Gomes and undermine that of Choquette. Thus, the Hearing Officer's decision, which did not account for any inferences to be drawn from this material evidence — particularly in light of the absence of any
corroborating evidence from JPC — is clearly erroneous.Foster-Glocester Reg'l Sch. Comm.,854 A.2d at 1018-19 (holding that the board abused its discretion and "erred by failing to give any evidentiary weight" on "relevant, material and nonrepetitious evidence," and the decision, which *Page 9 
"placed no weight at all on [this] evidence . . . was an abuse of discretion.").
The payroll records show the three (3) payments Gomes received for accrued vacation time. The employer's payroll records, organized by year, and employee earnings records, organized by month, show Gomes's earnings between the years 2001 and 2005. The first double payment, which indicates a vacation time payment attached to an ordinary wage payment, is found on the employee earning record at April 11, 2003, at checks numbered 4479 (for $469.46) and 4498 ($360.00).
It is undisputed that this extra check, disbursed on April 11, 2003, corresponds to granted vacation time. The date on which the check was issued, April 11, 2003, however, contradicts Choquette's testimony regarding application of the "waiting period" to Gomes's vacation accrual. Choquette stated, "[o]ne week of vacation was accrued from August 2002, through the end of 2003 . . . So, at the end of 2003 he had one week's total [vacation time] earned." (Tr. 9:23-10:5, emphasis added.) Given the confusion over when vacation is accrued and when it "matures," the Hearing Officer asked, "So that one week that he earned, he can't take until September of 2003?" (Tr. 10:6-8.) Choquette answered affirmatively. (Tr. 10:9.) As noted, however, Gomes's first vacation check was issued in April of 2003, five months before Gomes would be entitled to any vacation pay had the vacation time accrued according to JPC's version of the vacation policy. The fact that Gomes received his first vacation check in April of 2003 is consistent with Gomes's version of the vacation policy as discussed with him verbally; it corroborates Gomes's testimony that he accrued one week's vacation during his first year — August of 2001 to 2002. Under JPC's explanation of the vacation policy — which Choquette admitted he had no memory of explaining to Gomes (Tr. 18:5-8) — Gomes would not have been able to redeem any vacation time until at least September of 2003. (Tr. 10:6-8.) *Page 10 
The administrative record evidences that the Hearing Officer did not consider the payroll records in her decision, even though the records were admitted into evidence and discussed in detail at the hearing. In her decision, the Hearing Officer stated that the petitioner failed to prove his allegations because "he has offered no other evidence than his testimony which is directly contradicted by respondent's representative." (Dec.) Since the payroll records were not relied upon by the Hearing Officer in her decision, the Court can only conclude that the records' significance was overlooked or ignored. Sakonnet Rogers v. CoastalRes. Mgmt. Council, 536 A.2d 893, 897 (R.I. 1988). The Hearing Officer placed no weight at all on the payroll records. The payroll records, which show a vacation pay disbursement that belies Choquette's version of the vacation pay agreement, and corroborate Gomes's testimony, are relevant and material to the issue of whether the vacation policy was subject to a waiting period. Such disregard for relevant, material evidence constitutes an abuse of discretion.Foster-Glocester Reg'l Sch. Comm., 854 A.2d at 1018. The hearing officer the "was at least required to consider the [evidence], determine what weight such [evidence] should be accorded, and make [her] own findings of fact. The failure to do so [] was an abuse of discretion." Id. at 1021.
 IV Conclusion
After review of the entire record, this Court finds that the decision was clearly erroneous in view of the reliable, probative, and substantial evidence in the record, and that substantial rights of Appellant have been prejudiced. Further, the Department abused its discretion when it placed no weight at all on the relevant and material evidence. The Court sustains the appeal and the matter is remanded to the Department for entry of an administrative order consistent with this Decision. Counsel for the Appellant shall prepare an appropriate judgment for entry.

 *Page 1